# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP500 |
| COMPLETE TITLE: | Melissa Anderson and Kenneth Anderson, Plaintiffs-Appellants, v. Thomas Aul, Defendant-Respondent, Aul Real Estate Investment Company, LLC, Cornerstone Investments of Delafield, LLC, Riverside Investments, LLC, XYZ Insurance Company and ABC Insurance Company, Defendants, Wisconsin Lawyers Mutual Insurance Company, Intervenor-Respondent-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 353 Wis. 2d 238, 844 N.W.2d 636
(Ct. App. 2014 – Published)
PDC No: 2014 WI App 30

| | |
|---|---|
| OPINION FILED: | February 25, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 5, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Lee S. Dreyfus Jr. |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, CROOKS, ROGGENSACK, GABLEMAN, JJJJ., concur. (Opinion filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the intervenor-respondent-petitioner, there were briefs by *Claude J. Covelli* and *Boardman & Clark LLP*, Madison, and oral argument by *Claude J. Covelli*.

For the plaintiffs-appellants, there was a brief by *Holly Strop* and *Strop Law Offices, LLC*, Madison, and *Jeffrey O. Davis*,

*Patrick S. Nolan*, and *Quarles & Brady LLP*, Milwaukee. Oral argument by *Jeffrey O. Davis*.

An amicus curiae brief was filed by *Lee M. Seese* and *Michael Best & Friedrich LLP*, Waukesha, on behalf of the Wisconsin Bankers Association and Wisconsin Realtors Association.

**2015 WI 19**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP500
(L.C. No. 2012CV732)

STATE OF WISCONSIN : IN SUPREME COURT

Melissa Anderson and Kenneth Anderson,

       Plaintiffs-Appellants,

    v.

Thomas Aul,

       Defendant-Respondent,

Aul Real Estate Investment Company, LLC,
Cornerstone Investments of Delafield, LLC,
Riverside Investments, LLC, XYZ Insurance
Company and ABC Insurance Company,

       Defendants,

Wisconsin Lawyers Mutual Insurance Company,

       Intervenor-Respondent-Petitioner.

**FILED**

**FEB 25, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published court of appeals decision and order reversing a

judgment of the Waukesha County Circuit Court, Lee S. Dreyfus, Jr., Judge.[1]

¶2 Melissa and Kenneth Anderson sued their former attorney, Thomas Aul, for legal malpractice. Wisconsin Lawyers Mutual Insurance Company (WILMIC), Attorney Aul's professional liability insurer, intervened in the lawsuit. WILMIC sought summary judgment declaring that the insurance policy it issued to Attorney Aul did not cover the Andersons' claim.

¶3 The WILMIC insurance policy provides coverage for those "claims that are <u>first made</u> against the insured <u>and reported</u> to the [insurance company] <u>during the policy period</u>" (emphasis added). This type of policy is commonly known as a claims-made-and-reported policy.

¶4 Wisconsin's notice-prejudice statutes, Wis. Stat. §§ 631.81(1) and 632.26(2) (2011-12),[2] provide that an insured's failure to furnish timely notice of a claim as required by the terms of a liability policy will not bar coverage unless timely notice was "reasonably possible" and the insurance company was "prejudiced" by the delay.

---

[1] <u>Anderson v. Aul</u>, 2014 WI App 30, 353 Wis. 2d 238, 844 N.W.2d 636.

Justices Ann Walsh Bradley and David T. Prosser join this lead opinion. Justices N. Patrick Crooks, Patience D. Roggensack, and Michael J. Gableman join Justice Annette K. Ziegler's concurring opinion, which represents the majority opinion of the court. <u>See</u> ¶106 n.1 of Justice Ziegler's opinion.

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶5 The question presented is whether Wisconsin's notice-prejudice statutes supersede the WILMIC policy's requirement that claims be reported during the policy period. If the notice-prejudice statutes supersede this reporting requirement, the next question is whether, under the notice-prejudice statutes, WILMIC was prejudiced by Attorney Aul's failure to report the claim during the policy period.

¶6 The parties agree that the Andersons' claim against Attorney Aul was first made during the policy period, that Attorney Aul did not report the claim during the policy period, and that reporting the claim during the policy period was reasonably possible. They dispute whether the WILMIC policy's requirement that claims be reported during the policy period is governed by the notice-prejudice statutes and also whether WILMIC was prejudiced by Attorney Aul's failure to report the claim during the policy period.

¶7 Upon considering the text of the notice-prejudice statutes, the historical context of claims-made-and-reported policies, the statutory history of the notice-prejudice statutes, the consequences of alternative interpretations of the notice-prejudice statutes, and the purpose of claims-made-and-reported policies, we conclude that Wisconsin's notice-prejudice statutes do not supersede the reporting requirement specific to claims-made-and-reported policies.

¶8 Because we conclude that the notice-prejudice statutes do not supersede the WILMIC policy's requirement that claims be reported within the policy period, we need not address whether,

3

under the notice-prejudice statutes, WILMIC was prejudiced by Attorney Aul's failure to report the claim during the policy period. However, even if we had determined that the notice-prejudice statutes supersede this reporting requirement, WILMIC would prevail. Requiring an insurance company to provide coverage for a claim reported after the end of a claims-made-and-reported policy period is per se prejudicial to the insurance company.

¶9 Accordingly, the decision of the court of appeals is reversed.

¶10 Our analysis is as follows: After briefly setting forth the undisputed facts, we discuss the standards of review applicable to a review of summary judgment and to the interpretation and application of insurance policies and statutes. We follow this discussion with an analysis of the nature and history of claims-made-and-reported insurance policies and the terms of the WILMIC policy at issue in the instant case. Lastly, we interpret the relevant statutes, Wis. Stat. §§ 631.81(1) and 632.26(2), and discuss their application to the WILMIC policy.

I

¶11 The facts are not in dispute for purposes of this review.

¶12 On December 23, 2009, Melissa and Kenneth Anderson's attorney notified Attorney Thomas Aul by letter that they "were dissatisfied with the legal representation [Attorney Aul had] provided." The specific allegations were that Attorney Aul had

4

an unwaivable conflict of interest in the Andersons' purchase of commercial property in downtown Delafield; that Attorney Aul nonetheless represented the Andersons in that transaction; that the terms of the transaction were "unfair and unreasonable"; and that the "transaction violate[d] the rules of attorney professional responsibility." The Andersons demanded that Attorney Aul pay them $117,125.

¶13 Attorney Aul received the letter from the Andersons' attorney while he was insured under the claims-made-and-reported professional liability policy issued by WILMIC.

¶14 It is undisputed that the letter from the Andersons' attorney constituted a "claim first made against the insured" during the policy period (April 1, 2009, to April 1, 2010) and that the policy required Attorney Aul to report that claim to WILMIC during the same period. Attorney Aul did not report the claim to WILMIC until March 2011, nearly a year after the policy period expired.

¶15 A year later, in March 2012, the Andersons filed suit against Attorney Aul and several companies owned by Attorney Aul.[3] The Andersons alleged breach of fiduciary duty, legal malpractice (negligence), breach of contract, and misrepresentation contrary to Wis. Stat. § 100.18. The Andersons also sought punitive damages for Attorney Aul's

---

[3] The companies named as defendants were: Aul Real Estate Investment Company, LLC; Cornerstone Investments of Delafield, LLC; and Riverside Investments, LLC.

5

"malicious" conduct toward the Andersons "or his intentional disregard of the[ir] rights."

¶16 In May 2012, WILMIC moved to intervene in the lawsuit and undertook Attorney Aul's defense under a reservation of rights. The circuit court granted WILMIC's motion to intervene and bifurcated the case to address the issue of coverage first.

¶17 WILMIC filed a motion for summary judgment, seeking a declaration that the insurance policy it had issued to Attorney Aul did not provide coverage for the Andersons' claim. The circuit court granted WILMIC's motion for summary judgment. In an oral ruling, the circuit court stated that it was "satisfied that Mr. Aul did not notify [WILMIC] in a timely fashion." The circuit court further stated that "there's nothing in this record that indicates specifically that WILMIC has been prejudiced by this [untimely reporting], but that's not the standard as it presently exists. . . ."

¶18 On appeal, the court of appeals reversed the summary judgment in WILMIC's favor and held that "[b]oth the applicable statutes . . . and our case law make it clear that the circuit court must determine whether untimely notice prejudiced an insurer; the finding of untimeliness is not solely dispositive."[4] The court of appeals then applied the definition of "prejudice" adopted by this court in Neff v. Pierzina, 2001 WI 95, ¶44, 245

---

[4] Anderson, 353 Wis. 2d 238, ¶11.

Wis. 2d 285, 629 N.W.2d 177,[5] and concluded that because Attorney Aul's untimely reporting of the claim did not hinder WILMIC's "ability to investigate, evaluate, or settle [the] claim, determine coverage, or present an effective defense," WILMIC had not been prejudiced.[6]

## II

¶19  Summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[7]  "An appellate court reviews a summary judgment applying the same standards and methods used by the circuit court."[8]

¶20  Whether summary judgment should be granted in the instant case depends on the interpretation of the WILMIC insurance policy and the interpretation and application of Wis. Stat. §§ 631.18 and 632.26, the notice-prejudice statutes. Interpretation and application of insurance policies and statutes are ordinarily questions of law this court decides

---

[5] "Prejudice to the insurer in this context is a serious impairment of the insurer's ability to investigate, evaluate, or settle a claim, determine coverage, or present an effective defense, resulting from the unexcused failure of the insured to provide timely notice."  Neff v. Pierzina, 2001 WI 95, ¶44, 245 Wis. 2d 285, 629 N.W.2d 177.

[6] Anderson, 353 Wis. 2d 238, ¶¶13, 16.

[7] Wis. Stat. § 802.08(2).

[8] Frost ex rel. Anderson v. Whitbeck, 2002 WI 129, ¶4, 257 Wis. 2d 80, 654 N.W.2d 225.

independently of the decisions of the circuit court and court of appeals but benefiting from their analyses.

### III

¶21 Before examining the reporting requirement set forth as a condition of coverage in the claims-made-and-reported policy at issue in the instant case, we examine the nature and history of claims-made-and-reported policies, comparing them with other types of liability policies. This background information helps inform our interpretation of the text of the WILMIC insurance policy and the notice-prejudice statutes.

### A

¶22 There are two primary types of professional liability insurance policies: occurrence policies and claims-made policies.[9] Claims-made policies are further divisible into two primary types: pure claims-made policies and claims-made-and-reported policies.[10]

---

[9] See generally New Appleman on Insurance Law § 20.01[5][a] (Library ed.) (discussing occurrence-based and claims-made-based liability insurance). See also Gerald Kroll, The "Claims Made" Dilemma in Professional Liability Insurance, 22 UCLA L. Rev. 925, 928-31 (1974) (comparing occurrence and claims-made policies from the perspective of insurance companies and insureds).

[10] See Jeffrey P. Griffin, The Inapplicability of the Notice-Prejudice Rule to Pure Claims-Made Insurance Policies, 42 Conn. L. Rev. 235, 246-47 (2009) (distinguishing claims-made-and-reported policies from pure claims-made policies).

Courts and commentators often imprecisely use the term "claims-made" when they are in fact referring to pure claims-made policies or claims-made-and-reported policies.

¶23 Occurrence policies provide coverage "if the negligent act or omission occurs within the policy period, regardless of the date . . . the claim is made or asserted."[11]  It is the timing of the event causing injury, not the assertion or reporting of a claim based on that injury, that triggers the initial grant of coverage.  An insurance company may be held liable under an occurrence policy for claims made long after the policy period has expired.

¶24 An occurrence policy may, however, require the insured to provide notice of a claim "as soon as practicable" or within a stated period.  The requirement that notice be given to the insurance company "as soon as practicable" or within a stated period serves to maximize the insurance company's "opportunity to investigate, set reserves, and control or participate in negotiations with the third party asserting the claim against the insured."[12]

---

[11] Griffin, supra note 10, at 239 (quoting Gulf Ins. Co. v. Dolan, 433 So. 2d 512, 514 (Fla. 1983)).

[12] Prodigy Commc'ns Corp. v. Ag. Excess & Surplus Ins. Co., 288 S.W.3d 374, 380 (Tex. 2009) (internal quotations omitted) (citing Steven Plitt et al., Couch on Insurance § 186:13 (3rd ed. 1997)).  See also Underwood Veneer Co. v. London Guarantee & Accident Co., 100 Wis. 378, 381, 75 N.W. 996 (1898) ("The reason for requiring [immediate] notice is . . . to enable the [insurance company] to investigate the facts and circumstances of the accident while they [a]re fresh in mind, with the view of settling the loss . . . and, in case of a contest, to be prepared to defend the same . . . .").

¶25 In contrast, a pure claims-made policy provides coverage for claims made during the policy period.[13] Like an occurrence policy, a pure claims-made policy may require the insured to provide notice "as soon as practicable" or within a stated period.

¶26 A claims-made-and-reported policy, as its name suggests, provides coverage for claims both made and reported during the policy period. To trigger an initial grant of coverage, the injured third party must make a claim against the insured during the policy period and the insured must report that claim to the insurance company within the same period.[14] The event upon which the claim is based can, and often does, occur before the policy came into existence.[15]

¶27 Like occurrence policies and pure claims-made policies, a claims-made-and-reported policy can also contain a notice provision requiring the insured to give notice to the

---

[13] See 5 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 34:14 (5th ed. 2000).

[14] New Appleman on Insurance Law § 20.01[7][c] (stating that "coverage is triggered only where the third-party claim is asserted against the policyholder during the policy period and the policyholder notifies the carrier of the claim during the policy period" (emphasis in original)).

[15] 1 Arnold P. Anderson, Wisconsin Insurance Law § 5.4 (6th ed. 2013) ("The claims-made policy usually provides coverage for negligent acts that occurred before the policy's effective date . . . .").

insurance company "as soon as practicable" or within a stated period.[16]

¶28 The requirement in a claims-made-and-reported policy that claims be reported within the policy period and the requirement that notice be provided "as soon as practicable" or within a stated period are distinct and serve different purposes.[17] The requirement that claims be reported during the policy period "is directed to the temporal boundaries of the policy's basic coverage terms . . . ."[18] If the claim is not reported within the policy period, there is no initial grant of coverage. As we stated previously, the purpose of the requirement that notice be given "as soon as practicable" or within a stated period is to enable the insurance company to begin investigating the claim.

---

[16] See Griffin, supra note 10, at 247 ("The insuring agreements in [claims-made-and-reported] policies typically state that 'the insured shall, as a condition precedent to their rights under this policy, give written notice as soon as practicable to the company of a claim made against the insured . . . .").

[17] See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 29 (Mass. 1990) ("There are, in general, two types of notice requirements . . . . One is a requirement that notice . . . be given to the insurer 'as soon as practicable' . . . . The other . . . requires reporting of the claim during the term of the policy . . . . The purposes of the two types of reporting requirements differ sharply.").

[18] Prodigy Commc'ns Corp., 288 S.W.3d at 380 (citing Steven Plitt et al., Couch on Insurance § 186:13 (3rd ed. 1997)).

¶29 Not surprisingly, these two provisions (the reporting requirement specific to claims-made-and-reported policies and the notice requirement in all three kinds of liability policies) have been confused by practitioners and the judiciary.[19] This confusion can make it difficult to interpret notice-prejudice statutes and the cases discussing them.

¶30 Occurrence policies once dominated the professional liability insurance market.[20] However, in the late 1960s and early 1970s, pure claims-made policies and claims-made-and-reported policies began gaining favor in the professional liability insurance market as an antidote to the problems arising with occurrence insurance.[21]

---

[19] Steven Plitt et al., Couch on Insurance § 186:13 (3rd ed. 1997).

[20] See Sol Kroll, "Claims Made" - Industry's Alternative: "Pay as You Go" Products Liability Insurance, 1976 Ins. L.J. 63, 64 (1976) (discussing the history of liability insurance and the industry's transition from occurrence-based to "claims made"-based policies).

[21] John K. Parker, The Untimely Demise of the "Claims Made" Insurance Form?  A Critique of Stine v. Continental Casualty Company, 1983 Det. C. L. Rev. 25, 28-29 (1983).  See also Carolyn M. Frame, "Claims-Made" Liability Insurance: Closing the Gaps With Retroactive Coverage, 60 Temp. L.Q. 165, 171 (1987) ("In an attempt to reverse escalating losses, insurers developed the claims-made policy to replace the occurrence policy.").  See also Gerald Kroll, The "Claims Made" Dilemma in Professional Liability Insurance, 22 UCLA L. Rev. 925, 927 (1974) ("[T]he 'claims made' policy can be advantageous to both insureds and insurers and deserves preservation.").

For a general discussion of this history, see Griffin, supra note 10, at 239-46.

¶31 The primary drawback of occurrence-based professional liability policies is that the insurance company faces long tail exposure. "This 'tail' is the lapse of time between the date of the error and the time the claim is made."[22] Long tail exposure prevents insurance companies from making a precise calculation of premiums based upon the cost of the risks assumed.[23]

¶32 In contrast, "[t]he principal advantage of the claims-made policy for insurers is the avoidance of 'tail liability.' After termination of a policy, the claims-made insurer is no longer exposed to liability . . . ."[24] In addition, because pure claims-made policies and claims-made-and-reported policies are advantageous to insurance companies, they apparently result in lower premiums for the insured.[25]

¶33 By the mid-1980s, there was "almost universal acceptance of the 'claims made' insurance form."[26] "Most recent

---

[22] Zuckerman v. Nat'l Union Fire Ins. Co., 495 A.2d 395, 399 (1985).

[23] Zuckerman, 495 A.2d at 399.

Occurrence policy premiums have proven to be "inadequate to cover the inflationary increase in the cost of settling claims asserted years later." Id. Furthermore, the insurance company may no longer be in existence when the claim is finally made. Id.

[24] Frame, supra note 21, at 166 (footnote omitted).

[25] Griffin, supra note 10, at 244-45.

[26] Parker, supra note 21, at 32. See also, e.g., Zuckerman, 495 A.2d 395; Gulf Ins. Co., 433 So. 2d 512; Poirier v. Nat'l Union Fire Ins. Co., 517 So. 2d 225 (Ct. App. La. 1987).

13

forms [for legal malpractice insurance] are 'claims-made-and-reported,' requiring that the claim first be made against the insured and reported to the insurer within the policy term."[27]

B

¶34 With this background regarding the three main types of professional liability insurance policies in mind, and cognizant of the distinction between the reporting requirement specific to claims-made-and-reported policies and the notice requirement that may appear in all three types of policies, we turn to the text of the WILMIC insurance policy.

¶35 The requirement that all claims made against the insured during the policy period be reported to WILMIC during the policy period is set forth in several places within the policy.

¶36 First, the declarations page of the insurance contract states: "This policy is limited to liability for only those claims that are first made against the insured and reported to the Company during the policy period. This is a non-renewable policy."

¶37 Second, the introduction to the reissue application that Attorney Aul submitted to WILMIC in 2009, which is incorporated into the policy, begins by stating: **"Because claims made and reported policies expire each year, it is**

---

[27] 5 Mallen & Smith, supra note 13, § 34:14.

14

**critical that you report claims promptly and before your policy expires**" (emphasis in policy).

¶38  Third, a box titled "IMPORTANT NOTICE" on the cover of the policy booklet states: "THIS IS A CLAIMS MADE AND REPORTED INSURANCE POLICY.  COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE **CLAIMS** THAT ARE FIRST MADE AGAINST **YOU** AND REPORTED IN WRITING TO **US** DURING THE **POLICY PERIOD**.  THIS IS A NONRENEWABLE POLICY" (emphasis in policy).

¶39  Fourth, the first paragraph of Article I of the insurance policy (titled "COVERAGE AGREEMENTS") states:

> This insurance applies to **claims** first made against **you** and first reported to **us** in writing during the **policy period** that result from **wrongful acts** that occur after the retroactive date, if any.  **You** must send a written report of a **claim** or **claim incident** to **us** at **our** address set forth on the declarations page during the **policy period**. . . . **Your** failure to send a written report of a **claim** or **claim incident** to **us** within the **policy period** shall be conclusively deemed prejudicial to **us**.

(Emphasis in policy.)

¶40  Fifth, Article IV of the insurance policy (titled "CONDITIONS") states:

A.  **Notice of claim, claim incident or suit**

1.  As a condition of this insurance coverage, **you** shall, within this **policy period**:

a. give **us** written notice of any **claim** or **claim incident;** and

b. immediately forward to **us** every demand, notice, summons or other process received directly by **you** or by **your** representatives, in the event suit is brought against **you**.

15

2.  The written notice of a **claim** or **claim incident** shall include the:

    a.  date or dates of the alleged **wrongful act**, error or omission; and

    b.  injury or **damages** that have resulted or may result; and

    c.  circumstances by which **you** first became aware of such alleged **wrongful act**.

(Emphasis in policy.)

¶41 Finally, Article V of the insurance policy (titled "EXCLUSIONS") states:

**We** will not defend or pay, under this coverage:

. . . .

J.  Any **claim** or **claim incident** not reported in writing within the time period required in Article IV, Conditions.

(Emphasis in policy.)

¶42 The text of the WILMIC insurance policy clearly states, and the parties do not dispute, that the policy's coverage is limited to those claims that were first made against Attorney Aul and first reported in writing to WILMIC between April 1, 2009, and April 1, 2010. As we discussed previously, the purpose of restricting coverage to claims both made and reported during the policy period is to set "the temporal boundaries of the policy's basic coverage terms," that is, to "define[ ] the limits of the insurer's obligation."[28]

---

[28] 13 Steven Plitt et al., Couch on Insurance § 186:13 (3rd ed. 1997).

16

¶43 Neither party asks the court to rewrite the insurance policy (a task we will not undertake) to bind WILMIC to a risk it "did not contemplate and for which it has not been paid."[29] Rather, the parties dispute the effect of the notice-prejudice statutes on the WILMIC policy's reporting requirement.

¶44 We therefore turn to the notice-prejudice statutes.

IV

¶45 There are two notice-prejudice statutes at issue in the instant case.

¶46 First is Wis. Stat. § 631.81(1), which applies to all insurance policies delivered in this state[30] and provides that failure to furnish "notice or proof of loss" within the time required by the policy will "not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit." The text of § 631.81(1) reads as follows:

> (1) **Timeliness of notice.** Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

---

[29] Smith v. Katz, 226 Wis. 2d 798, 807, 595 N.W.2d 345 (1999) ("It is important to remember that 'a contract of insurance is not to be rewritten by the court to bind an insurer to a risk which the insurer did not contemplate and for which it has not been paid.'").

[30] See Wis. Stat. § 631.01(1).

17

¶47 Second is Wis. Stat. § 632.26, which applies to "every liability insurance policy" delivered in this state[31] and provides that an insured's failure to give any notice required by the policy will not preclude coverage if it was not reasonably possible to give the prescribed notice, notice was given as soon as reasonably possible,[32] and the insurance company was not prejudiced by the late notice.[33] The statute further states that "the risk of nonpersuasion is upon the person claiming there was no prejudice."[34] The text of Wis. Stat. § 632.26 reads as follows:

> **(1) Required provisions.** Every liability insurance policy shall provide:
>
> . . . .
>
> (b) That failure to give any notice required by the policy within the time specified does not invalidate a claim made by the insured if the insured shows that it was not reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably possible.
>
> **(2) Effect of failure to give notice.** Failure to give notice as required by the policy as modified by sub. (1)(b) does not bar liability under the policy if the insurer was not prejudiced by the failure, but the risk of nonpersuasion is upon the person claiming there was no prejudice.

---

[31] Wis. Stat. § 632.26(1).

[32] Wis. Stat. § 632.26(1)(b).

[33] Wis. Stat. § 632.26(2).

[34] Id.

18

¶48 We are faced with a difficult and close question of statutory interpretation, namely whether these statutes supersede the terms of the WILMIC policy that limit its coverage to those claims that are first made against Attorney Aul and first reported to WILMIC within the policy period. We resolve this question by employing the tools of statutory interpretation.

¶49 The court has set forth the tools of statutory interpretation many times. "Our goal in interpreting a statute is to discern and give effect to the intent of the legislature."[35] We begin with the statute's text.[36] "Words are ordinarily interpreted according to their common and approved usage; technical words and phrases . . . are ordinarily interpreted according to their technical meaning."[37] We read statutes as a whole and "give effect to each word" in the statute "to avoid surplusage."[38]

¶50 "[I]t is often valuable to examine the statute in context."[39]  "[C]ontext inflects statutory interpretation."[40]

---

[35] Hubbard v. Messer, 2003 WI 145, ¶9, 267 Wis. 2d 92, 673 N.W.2d 676.

[36] Legue v. City of Racine, 2014 WI 92, ¶61, 357 Wis. 2d 250, 849 N.W.2d 837.

[37] Id.

[38] Id.

[39] Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659.

[40] Id., ¶45.

"The statutory language is examined in the context in which it is used."[41] Context refers not only to the language of the statute but also to the relationship of the statute at issue with other statutes.[42] Context can also mean the factual setting.[43] The same statute may be "ambiguous in one setting and unambiguous in another."[44] "[R]easonable minds can differ about a statute's application when the text is a constant but the circumstances to which the text may apply are kaleidoscopic."[45]

¶51 To determine a statute's meaning, we examine the statutory history and case law. In addition, the purpose of the statute and "the consequences of alternative interpretations" inform our interpretation.[46] We decline to read statutes in a way that produces absurd, implausible, or unreasonable results, or results that are at odds with the legislative purpose.[47]

¶52 We begin our interpretation of the notice-prejudice statutes with the statutory texts.

---

[41] _Klemm v. Am. Transmission Co._, 2011 WI 37, ¶10, 333 Wis. 2d 580, 798 N.W.2d 223.

[42] _Seider_, 236 Wis. 2d 211, ¶43.

[43] _Id._

[44] _Id._

[45] _Id._

[46] _Legue_, 357 Wis. 2d 250, ¶61.

[47] _Hubbard_, 267 Wis. 2d 92, ¶9.

¶53 On their face, these statutes can be read to prohibit an insurance company from denying coverage under a liability policy because notice of a claim was given after the end of the policy period, unless the insurance company was prejudiced by the delay.  The Andersons urge us to adopt this reading of the statutes and to invalidate the WILMIC policy's requirement that claims be reported during the policy period.  They argue that the statutes supersede this requirement.

¶54 The only court that has considered Wisconsin's notice-prejudice statutes in the context of a claims-made-and-reported policy is the United States Court of Appeals for the Seventh Circuit.[48]  In Lexington Insurance Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999), the federal court of appeals adopted the literal reading of the statutes advanced by the Andersons in the present case.  In adopting this interpretation, the federal court of appeals was greatly influenced by its limited role as a federal court sitting in diversity on a case requiring the interpretation of Wisconsin law.[49]

¶55 The insurance policy at issue in Lexington Insurance required that any claim made within the policy period be reported to the insurance company within 30 days of the policy's expiration.  The federal court of appeals first noted that if interpretation of the insurance policy were the only issue,

---

[48] Lexington Ins. Co. v. Rugg & Knopp, Inc., 165 F.3d 1087 (7th Cir. 1999).

[49] Id. at 1092.

21

there would be no coverage because the insured indisputably failed to report the claim as required by the policy.[50] It then examined Wisconsin's notice-prejudice statutes, noting that "a federal court sitting in diversity must proceed with caution in making pronouncements about state law."[51]

¶56 The federal court of appeals concluded that, regardless of the type of policy, the insurance company could not "refuse liability for payment merely because of late notice."[52] It based this determination on the literal words of the statutes, holding that on their face, the notice-prejudice statutes provide that in Wisconsin, an insurance company may not contractually limit its liability to claims reported within the policy period.[53]

¶57 Nevertheless, the federal court of appeals recognized that statutory interpretation does not end with an examination of the statute's text.[54] We agree. Although the literal reading of a statute is important, a court is not bound by that reading when other factors contradict it. A statute that has superficial clarity may nevertheless contain latent ambiguities,

---

[50] Id. at 1089.

[51] Id. at 1092.

[52] Id. at 1094.

[53] Id. at 1092.

[54] Id. at 1091-92.

and courts may turn to various interpretive aids for guidance in resolving them.[55]

¶58  The notice-prejudice statutes state that they apply to all liability policies, but as we explained previously, there are three different types of professional liability policies with two different types of notice and reporting requirements. The statutes do not differentiate between the notice requirement that may be included in any of the three types of liability policies and the reporting requirement particular to claims-made-and-reported policies.

¶59 We conclude after a close examination of the notice-prejudice statutes that they were not intended to supersede the reporting requirement specific to claims-made-and-reported policies.

¶60 We begin by examining the context of the statutes, including the historical context of occurrence and claims-made-and-reported policies, as well as the statutory history.

¶61 We discussed previously the history of claims-made-and-reported policies.  Claims-made-and-reported policies were relatively new to the liability insurance market in the 1970s. Occurrence liability policies were predominant.

¶62 Wisconsin Stat. § 631.81 was enacted in 1975.[56] Wisconsin Stat. § 632.26 was enacted in 1979.[57]  Thus, both

---

[55] 2A Norman Singer & Shambie Singer, Sutherland Statutes and Statutory Construction § 46:4 (7th ed. 2008).

[56] Ch. 375, Laws of 1975.

23

notice-prejudice statutes were enacted when occurrence liability policies were predominant. These notice-prejudice statutes were part of a broader revision of Wisconsin's insurance laws in response to recommendations made by the Insurance Laws Revision Committee of the Wisconsin Legislative Council. The minutes from this Committee's meetings are not helpful in determining whether the notice-prejudice statutes were intended to reach the reporting requirement specific to claims-made-and-reported policies.

¶63 Based, however, on the timing of the development of claims-made-and-reported insurance and the enactment of the notice-prejudice statutes, it is plausible that the Committee and the legislature were thinking of the traditional requirement that insureds provide notice "as soon as practicable" or within a stated period, not the reporting requirement specific to claims-made-and-reported policies.

¶64 We turn now to statutory history, that is, to the predecessor statutes to Wis. Stat. §§ 631.81 and 632.26, for insight into the scope of these notice-prejudice statutes and their applicability to the reporting requirement in claims-made-and-reported policies.

¶65 The historical context of the statutes begins with Bachhuber v. Boosalis, 200 Wis. 574, 229 N.W. 117 (1930), which

---

[57] Ch. 102, Laws of 1979.

24

involved an occurrence-based automobile liability policy.[58] After a collision, the insured was charged with "negligence causing the damage."[59] The insurance company argued that the insured was not covered under the policy because he failed to comply with the policy's notice provisions.[60] The policy required the insured to give "immediate notice of the accident . . . and immediate notice of the claim."[61] This court agreed with the insurance company: "The provisions in the policy as to notice . . . are <u>conditions precedent</u>, failure to perform which . . . constitutes [a] defense[] to liability on the policy" (emphasis added).[62]

¶66 The important words are "conditions precedent." A condition precedent is an event that must occur before performance under a contract becomes due.[63] In other words,

---

[58] For earlier cases requiring compliance with an insurance policy's notice requirements in order to gain coverage, see <u>Britz v. Am. Ins. Co.</u>, 2 Wis. 2d 192, 199-200, 86 N.W.2d 18 (1957).

[59] <u>Bachhuber v. Boosalis</u>, 200 Wis. 574, 575, 229 N.W. 117 (1930).

[60] <u>Id.</u>

[61] <u>Id.</u>

[62] <u>Id.</u>

[63] Restatement (Second) of Contracts § 224, at 160 (1981). The Restatement (Second) of Contracts abandons the term "condition precedent" in favor of "condition." <u>Id.</u> at 164. The Reporter's Note to § 224 states that the phrase "condition precedent" has been the subject of frequent criticism and has caused unnecessary confusion. <u>Id.</u>

(continued)

25

there is no coverage under the policy until the condition precedent has been performed.[64] Thus, by construing the occurrence policy's "immediate notice" requirement as a condition precedent, the Bachhuber court determined that no coverage existed under the policy in the absence of "immediate notice."

¶67 Bachhuber reflects what was then the prevailing interpretation of policy provisions requiring notice "as soon as

---

For a discussion of the use of the phrase "condition precedent," see Fox v. Catholic Knights Ins. Soc'y, 2003 WI 87, ¶¶23-24, 263 Wis. 2d 207, 665 N.W.2d 181.

[64] See Richard Lord, 16 Williston on Contracts § 49:87 (4th ed. 2000) (stating that when an insurance contract contains a condition precedent, "the fulfillment of the condition by the insured must occur before the insurer becomes legally liable on the policy"). See also id., § 49:109 ("Insurance contracts quite commonly contain, as an express condition precedent to the insurer's duty to defend or indemnify the insured, a provision requiring the insured to give notice to the insurer, within a specified or reasonable time . . . . [L]iability will arise only when notice is given.").

practicable" or within a stated time.[65] Such provisions were considered "of the essence of the [liability insurance] contract."[66] Even when the liability policy lacked a forfeiture clause, an insured's failure to provide notice "as soon as practicable" or within a stated time would usually "release the insurer from liability."[67] In other words, there was no coverage

---

[65] See L.S. Elkins, Annotation, Liability Insurance: Clause with Respect to Notice of Accident, Claim, etc., or with Respect to Forwarding Suit Papers, 76 A.L.R. 23, 53-74 (1932) (surveying cases holding that liability policy provisions requiring immediate notice or notice within a reasonable time create conditions precedent to the insurance company's obligation to pay); Restatement of Contracts § 259, at 371 (1932) ("Though failure by [the insured] to notify the [insurance company] within the 30-day period is stated as a condition subsequent terminating a duty to pay, such notification is in effect a condition precedent, since there is no duty of immediate performance until notification has been given."). See also Foster v. Fid. & Cas. Co., 99 Wis. 447, 449, 75 N.W. 69 (1898) (because the insured failed to fulfill the condition precedent of providing immediate notice of "any accident or injury for which a claim is to be made," judgment in the insured's favor was reversed).

[66] L.S. Elkins, Annotation, Liability Insurance: Clause with Respect to Notice of Accident, Claim, etc., or with Respect to Forwarding Suit Papers, 76 A.L.R. 23, 58 (1932).

[67] L.S. Elkins, Annotation, Liability Insurance: Clause with Respect to Notice of Accident, Claim, etc., or with Respect to Forwarding Suit Papers, 76 A.L.R. 23, 201-02 (1932).

(continued)

27

under the policy when an insured did not comply with a condition precedent such as notice within a specified time.

¶68 The Wisconsin legislature responded swiftly to the harsh result in Bachhuber by enacting Wis. Stat. § 204.33 (1931-32).[68] This notice-prejudice statute provided that failure to give timely notice would not bar coverage if the insurance company was not prejudiced by the delay. The effect of the statute was to expand certain policies' coverage. The statute applied, however, only to "liability or loss arising by reason of the ownership, maintenance or use of a motor vehicle issued in this state."[69] The statute reads in relevant part as follows:

> (3) . . . . Failure to give [timely] notice shall not bar liability under such policy of insurance,

---

Even now, "a vast majority of notice provisions are described as conditions precedent to recovery under the policies." 13 Steven Plitt et al., Couch on Insurance § 186:41 (3rd ed. 1997). However, many courts do not apply the "strict forfeiture" rule when an insured fails to fulfill the condition precedent that notice be provided "as soon as practicable" or within a stated time. Steven Plitt et al., Couch on Insurance § 186:6 (3rd ed. 1997). "A recent survey places 11 states and the District of Columbia in this [strict forfeiture] category . . . ; 25 states require some showing of prejudice from the insurer." Id.

[68] See ch. 477, Laws of 1931; Britz, 2 Wis. 2d at 201.

[69] Wis. Stat. § 204.33(1) (1931-32). See RTE Corp. v. Maryland Cas. Co., 74 Wis. 2d 614, 631, 247 N.W.2d 171 (1976) (holding that "[t]his court has consistently treated the rule established in the [notice-prejudice] statute as an exception to the general rule" that insurance companies need not show prejudice to bar coverage based on an insured's failure to fulfill the condition precedent of providing notice "as soon as practicable" or within a stated time.).

28

agreement of indemnity or bond . . . if the insurer was not prejudiced or damaged by such failure, but the burden of proof to so show shall be upon the person claiming such liability.[70]

¶69 Bachhuber was followed by Britz v. American Insurance Co., 2 Wis. 2d 192, 202, 86 N.W.2d 18 (1957). Britz did not involve an automobile accident; it involved theft. The parties disputed whether the notice-prejudice statute applied to the insurance policy at issue, which required notice "as soon as practicable." The court concluded that the statute's explicit reference to automobile liability policies was dispositive. Insurance companies could deny coverage under non-automobile liability insurance policies when the insured failed to provide notice within the period stated in the policy.

¶70 A decade later, Allen v. Ross, 38 Wis. 2d 209, 156 N.W.2d 434 (1968), involved an automobile liability policy. The policy provided that notice had to be given to the insurance company "as soon as practicable" after an accident occurred. The court declared that the automobile liability policy's notice requirement was subject to the notice-prejudice statute.[71]

¶71 Thus, by the mid-1970s, it was well settled that the notice-prejudice statute then in existence applied only to automobile liability policies. The statute had not been applied

---

[70] Wis. Stat. § 204.33(3) (1931-32).

[71] Allen v. Ross, 38 Wis. 2d 209, 213, 156 N.W.2d 434 (1968).

29

to any non-automobile liability policy or to the reporting requirement specific to claims-made-and-reported policies.

¶72 In 1975, the legislature modified and reenacted the notice-prejudice statute as Wis. Stat. § 631.81. The scope of the notice-prejudice statute's applicability was expanded from automobile liability policies to "all insurance policies."[72]

¶73 It is clear the legislature intended Wis. Stat. § 631.81 to reach beyond automobile liability polices, but neither the text of the revised statute nor the Committee comments discussing the provision addresses the distinction between the requirement that notice be provided "as soon as practicable" or within a stated period and the reporting requirement specific to claims-made-and-reported policies.

¶74 Although it is not clear from the statutory history or Committee materials we located that the legislature intended this notice-prejudice statute to reach beyond the traditional type of notice requirement, the Committee comments to Wis. Stat. § 631.81 are helpful. They seem to signify that the statute does not reach the reporting requirement specific to claims-made-and-reported policies.

¶75 The Comments state that "[t]he proper time for giving notice of a loss or injury depends on the nature of the coverage . . . . In each class of insurance, the interests of the insured and insurer must be carefully evaluated and weighed

---

[72] Ch. 375, Laws of 1975, § 41, Leg. Council Note to 631.81(1).

against each other."[73] The Comments then provide the following example: "For instance, the conditions for hospitalization benefits in case of plain sickness insurance are easy to check even after some time . . . . The insurer's position in adjusting such claims may not be materially affected if it receives the hospital or doctors' bills months later."[74]

¶76 These Comments suggest that the statute refers to the kind of notice provision that enables an insurance company to effectively investigate a claim, not to the reporting requirement in claims-made-and-reported policies. As we explained previously, the requirement in claims-made-and-reported policies that claims be reported during the policy period is not designed to assist the insurance company in investigating those claims. It therefore appears that Wis. Stat. § 631.81 does not reach the reporting requirement specific to claims-made-and-reported policies.

¶77 Wisconsin Stat. § 632.26 was enacted in 1979, just four years later.[75] The statute explicitly states that it applies to "[e]very liability insurance policy."[76] The statute again fails, however, to distinguish between a policy requirement that notice be provided "as soon as practicable" or

---

[73] Id.

[74] Id.

[75] See ch. 102, Laws of 1979.

[76] Wis. Stat. § 632.26(1).

31

within a stated period and the reporting requirement specific to claims-made-and-reported policies. Again, it is <u>not</u> clear from the statutory history or Committee materials that the legislature intended this notice-prejudice statute to reach beyond the traditional type of notice requirement to the reporting requirement specific to claims-made-and-reported policies.

¶78 There is no indication from the historical context of claims-made-and-reported policies or the statutory history that the legislature intended to extend the reach of the notice-prejudice statutes to the reporting requirement specific to claims-made-and-reported policies.

¶79 To aid us in reaching the correct interpretation of the notice-prejudice statutes, we next examine the consequences of alternative interpretations.

¶80 If we interpret the notice-prejudice statutes as inapplicable to the reporting requirement specific to claims-made-and-reported policies, the consequence is that such reporting requirements will remain in full force and effect and an insured may lose coverage by missing the reporting deadline. Strictly limiting the time in which an insured must report a claim can lead to harsh results for the insured and third-party victims. Indeed, in the present case, the Andersons can be viewed as being victimized twice; first they were allegedly harmed by Attorney Aul's negligence in representing them and now they are harmed by Attorney Aul's failure to abide by the WILMIC policy's reporting requirement.

32

¶81 Furthermore, we are concerned that a decision favorable to WILMIC in the present case may open the door for insurance companies to incorporate similar reporting requirements into a wide range of insurance policies and thereby circumvent the consumer protection aspects of these notice-prejudice statutes.

¶82 Yet, if we interpret the notice-prejudice statutes to apply to the reporting requirement specific to claims-made-and-reported policies, we will in effect rewrite the terms of such policies. This interpretation would mean the legislature has eliminated a significant element of claims-made-and-reported policies. The reporting requirement, after all, is what distinguishes claims-made-and-reported policies from other kinds of liability policies. Thus, claims-made-and-reported policies would be converted into pure claims-made policies or occurrence policies. Such an interpretation would frustrate the purpose of claims-made-and-reported policies.[77]

¶83 We did not locate anything in the statutory text, the history of claims-made-and-reported policies, the statutory history, or the Committee materials indicating that the

---

[77] "The ultimate threat (and evidence of prejudice) is that allowing late notice will turn a claims-made policy into an occurrence policy, which could make insurance difficult to obtain for . . . professional liability. Insurers do not write occurrence policies for such risks because it is unprofitable and difficult to underwrite." 1 Arnold P. Anderson, Wisconsin Insurance Law § 5.10 (6th ed. 2013).

legislature intended to invalidate claims-made-and-reported policies.

¶84 In this close statutory interpretation case, we conclude that requiring an insurance company to cover a claim reported after the end of a claims-made-and-reported policy period would mean expanding the policy's initial grant of coverage. We conclude that interpreting Wisconsin's notice-prejudice statutes to rewrite the fundamental terms of the WILMIC insurance policy would be unreasonable.

¶85 Persuasive authority from several courts that have decided issues substantially similar to those presented in the instant case bolsters our conclusion that the notice-prejudice statutes do not apply to the requirement in claims-made-and-reported policies that claims be reported during the policy period.[78]

¶86 Numerous courts have concluded that a claims-made-and-reported policy's limitation of coverage to claims reported during the policy period is enforceable notwithstanding a

---

[78] See Russ ex rel. Schwartz v. Russ, 2007 WI 83, ¶34 n.9, 302 Wis. 2d 264, 734 N.W.2d 874 ("The present case involves a matter of first impression for which no Wisconsin cases are directly on point. Therefore, we may look to other jurisdictions for persuasive authority.").

statutory or common-law notice-prejudice rule.[79] Other courts have held the reporting requirement in claims-made-and-reported policies unenforceable in light of statutory or common-law notice-prejudice rules.[80]

---

[79] See, e.g., Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 49 (1st Cir. 2009); DiLuglio v. New England Ins. Co., 959 F.2d 355, 359 (1st Cir. 1992); Burns v. International Ins. Co., 929 F.2d 1422, 1425 (9th Cir. 1991); Esmailzadeh v. Johnson & Speakman, 869 F.2d 422, 424-25 (8th Cir. 1989); Simundson v. United Coastal Ins. Co., 951 F. Supp. 165, 167-68 (D. N.D. 1997); Bianco Prof'l Ass'n v. Home Ins. Co., 740 A.2d 1051, 1057-58 (N.H. 1999); Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1364-66 (R.I. 1994); Hasbrouck v. St. Paul Fire & Marine Ins. Co., 511 N.W.2d 364, 367-69 (Iowa 1993); Chas. T. Main, Inc., 551 N.E.2d at 29-30; Zuckerman, 495 A.2d at 403-05; Gulf Ins. Co., 433 So. 2d at 515-16; Ins. Placements, Inc. v. Utica Mut. Ins. Co., 917 S.W.2d 592, 597 (Mo. Ct. App. 1996); Sletten v. St. Paul Fire and Marine Ins. Co., 780 P.2d 428, 430-31 (Ariz. Ct. App. 1989).

[80] See, e.g., Lexington Ins. Co., 165 F.3d at 1092-94 (concluding, in the absence of a state appellate court ruling on the matter, that Wisconsin's notice-prejudice statutes supersede the reporting requirement in claims-made-and-reported policies, but noting that the insurance company likely had a meritorious claim of prejudice due to the insured's late reporting); Sherwood Brands, Inc. v. Great Am. Ins. Co., 13 A.3d 1268, 1288 (Md. 2011) (holding that Maryland's notice-prejudice statute requires a showing of prejudice by the insurance company when "the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions," even when the policy is a claims-made-and-reported policy). In Sherwood Brands, the Court of Appeals of Maryland repeatedly highlighted the difference between the notice-prejudice statutes in Wisconsin and Maryland to support its holding that in Maryland, an insurance company must show prejudice to deny coverage on the grounds that an insured reported a claim after the end of a claims-made-and-reported policy period. Sherwood Brands, 13 A.3d at 1286, 1288.

¶87  Gulf Insurance Co. v. Dolan, 433 So. 2d 512 (Fla. 1983), was an early and influential case regarding the enforceability of claims-made-and-reported insurance.[81]  The insured argued that general public policy considerations rendered unenforceable the insurance policy's limitation of coverage to claims both made and reported during the policy period.  The Florida Supreme Court disagreed with the insured.

¶88  The insured asserted that enforcing the requirement of notice within the policy period, when the claim at issue was first made against the insured the day before the policy period ended, would be unjust.  In rejecting the insured's argument, the court noted that "[t]he essence" of a claims-made-and-reported policy is "notice to the carrier within the policy period."[82]  The court reasoned that if it held otherwise it would be rewriting the policy to extend coverage:

> If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained.  This extension of coverage . . . in effect rewrites the contract between the two parties.  This we cannot and will not do.[83]

¶89  Gulf Insurance involves a factual scenario different from the present case.  In Gulf Insurance, reporting the claim

---

[81] See Griffin, supra note 10, at 251-52.

[82] Gulf Ins. Co. v. Dolan, 433 So. 2d 512, 514 (Fla. 1983) (emphasis in original).

[83] Id. at 515-16.

within the policy period may not have been reasonably possible. In the instant case, it was reasonably possible for Attorney Aul to report the claim within the policy period. We do not address in this case whether a policy's limitation of coverage to claims reported during the policy period is enforceable when reporting the claim during the policy period was not reasonably possible. However, even Gulf Insurance acknowledged that "if an impossibility prevented notice being given to an insurer at the very end of the policy period, it may well be that an insured would be relieved of giving notice during the period of such impossibility."[84]

¶90 In Zuckerman v. National Union Fire Insurance Co., 495 A.2d 395 (N.J. 1985), the New Jersey Supreme Court adopted the Gulf Insurance reasoning and held that "no considerations of public policy . . . inhibit our enforcement" of a claims-made-and-reported policy's limitation of coverage to claims both made and reported during the policy period.[85] The court rejected the insured's argument that the insurance company should be required to prove "appreciable prejudice" in order to avoid liability.[86] "Appreciable prejudice" was a New Jersey common-law doctrine applicable to notice requirements in occurrence-based automobile

---

[84] Gulf Ins. Co., 433 So. 2d at 512 n.1.

[85] Zuckerman v. Nat'l Union Fire Ins. Co., 495 A.2d 395, 404 (N.J. 1985).

[86] Id. at 405-06.

insurance policies.[87] The court held this common-law doctrine inapplicable "to a 'claims made' policy that fulfills the reasonable expectations of the insured with respect to the scope of coverage."[88]

¶91 In <u>Chas. T. Main v. Fireman's Fund Insurance Co.</u>, 551 N.E.2d 28 (Mass. 1990), the Supreme Judicial Court of Massachusetts addressed the effect of a notice-prejudice statute on an insurance company's ability to deny coverage under a claims-made-and-reported policy for a claim reported after the end of the policy period. The statute, Mass. Gen. Laws ch. 175, § 112, stated in relevant part:

> An insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim, which may give rise to liability insured against unless the insurance company has been prejudiced thereby.

¶92 In holding this statute applicable "only to the 'as soon as practicable' type of notice [requirement] and not to the 'within the policy year' type of reporting requirement,"[89] the court emphasized the distinction between claims-made-and-reported policies and occurrence policies and the purposes of each:

---

[87] <u>Id.</u> at 405.

[88] <u>Id.</u> at 406.

[89] <u>Chas. T. Main, Inc.</u>, 551 N.E.2d at 30.

The purpose of a [claims-made-and-reported] policy is to minimize the time between the insured event and the payment. For that reason, the insured event is the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period . . . . If a claim is made against an insured, but the insurer does not know about it until years later, the primary purpose of insuring claims rather than occurrences is frustrated. Accordingly, the requirement that notice of the claim be given in the policy period . . . is of the essence in determining whether coverage exists. Prejudice for an untimely report in this instance is not an appropriate inquiry.[90]

¶93 The Supreme Judicial Court of Massachusetts concluded that requiring an insurance company writing a claims-made-and-reported policy to show prejudice on account of the "insured's failure to report a claim within the policy period . . . would defeat the fundamental concept on which [claims-made-and-reported] policies are premised."[91] The court stated that it would be unreasonable to think the legislature intended to invalidate claims-made-and-reported policies.[92]

¶94 In Simundson v. United Coastal Insurance Co., 951 F. Supp. 165 (D.N.D. 1997), the United States District Court for the District of North Dakota took a similar approach with regard to a common-law notice-prejudice rule. According to the insurance company, the claims-made-and-reported policy it had issued to the insured did not cover the claim because it was not

---

[90] Id.

[91] Id.

[92] Id.

39

reported until roughly two years after the policy period expired. The general rule applicable to occurrence policies in North Dakota is that insurance companies cannot refuse coverage because of untimely notice of a claim unless the company suffers prejudice.

¶95 The federal district court granted summary judgment to the insurance company. The federal court refused to accept the argument in this claims-made-and-reported policy case that "coverage should be available because [the insurance company] suffered no actual prejudice from the delay . . . ."[93] Even though the North Dakota courts had not yet ruled on the issue, the federal court held for the insurance company, refusing to rewrite the basic terms of the claims-made-and-reported policy. It stated:

> [T]o require an insurer to suffer actual prejudice from a tardy notice of claim before denying coverage under a "claims made" policy would be changing the very nature of the policy. . . . Such a rule would in effect treat a "claims made" policy as an "occurrence" type policy, presumably a more expensive policy that was not bargained for. Therefore, this court finds that the North Dakota Supreme Court, if faced with the issue, would find in accordance with the majority of other courts that the actual prejudice rule does not apply to "claims made" insurance policies.[94]

¶96 Finally, in _Gargano v. Liberty International Underwriters, Inc._, 572 F.3d 45, 49 (1st Cir. 2009), the United

---

[93] _Simundson v. United Coastal Ins. Co._, 951 F. Supp. 165, 167 (D. N.D. 1997).

[94] _Id._ at 167.

40

States Court of Appeals for the First Circuit cited Chas T. Main with approval. The federal court of appeals stated that under settled Massachusetts law, an "insured event" arises in the context of a claims-made-and-reported policy when: "(1) the claim [is] . . . first made against the insured during the policy period, and (2) the claim [is] . . . reported to the insurer within the policy period."[95] The court "reject[ed] out of hand Gargano's assertion that the insurance companies must demonstrate prejudice . . . to escape liability."[96] Rather, the court declared that the requirement of reporting "within the policy period 'is of the essence in determining whether coverage exists.'"[97]

¶97 Thus, these courts have held that claims-made-and-reported policies' restriction of coverage to claims both made and reported during the policy period is enforceable despite statutory or common-law notice-prejudice rules similar to our own notice-prejudice statutes.

¶98 In sum, the benefits to insurance companies and insureds of claims-made-and-reported policies, the statutory history underlying Wisconsin's notice-prejudice statutes, the persuasive authority of other courts that have decided the question presented by this case, and the unreasonable results a

---

[95] Gargano, 572 F.3d at 49.

[96] Id. at 51.

[97] Id. at 49 (quoting Chas. T. Main, Inc., 551 N.E.2d at 30).

41

contrary holding would produce persuade us that Wisconsin's notice-prejudice statutes permit an insurance company to deny coverage without a showing of prejudice when an insured fails to report a claim within a claims-made-and-reported policy period.

V

¶99 Because we hold the notice-prejudice statutes inapplicable to the WILMIC insurance policy's requirement that claims be reported during the policy period, we need not consider the prejudice element of the statutes. However, even if we were to conclude that the notice-prejudice statutes apply to the reporting requirement at issue, WILMIC would prevail.

¶100 In short, requiring an insurance company to provide coverage for a claim reported after the end of a claims-made-and-reported policy period is per se prejudicial to the insurance company because it expands the grant of coverage provided by the insurance policy.

¶101 Premiums on claims-made-and-reported insurance policies are ordinarily set below the levels charged for comparable occurrence policies based in part on the limitation of coverage to claims reported within the policy period. Thus, when a claim is not reported within the policy period, requiring the insurance company to nevertheless provide coverage is prejudicial.[98] Holding otherwise would defeat the fundamental premise of claims-made-and-reported policies.

---

[98] See DiLuglio v. New England Ins. Co., 959 F.2d 355, 359 (1st Cir. 1992); Bianco Prof. Ass'n, 740 A.2d at 1057.

(continued)

¶102 In their briefs and at oral argument, the parties focused on the question of prejudice. WILMIC argued that requiring it to provide coverage for a claim reported after the end of the policy period would be per se prejudicial and would negate the purpose of the claims-made-and-reported policy for which the parties had bargained. The Andersons argued that establishing prejudice from the fact of late reporting in the context of claims-made-and-reported insurance would negate the purpose of the notice-prejudice statutes.

¶103 As we noted previously, from the Andersons' vantage point, they have been victimized twice: first by Attorney Aul's malpractice and now by his failure to comply with his malpractice insurance policy's reporting requirement. We reach a harsh result, but one we have determined the law requires. We

---

Although the seventh circuit court of appeals held against the insurance company, it characterized this prejudice approach as a promising one for insurance companies (but one that was waived in the case at hand). Lexington Ins. Co., 165 F.3d at 1095.

See also Chas. T. Main, Inc., 551 N.E.2d at 30 (holding that Massachusetts's notice-prejudice statute "applies only to the 'as soon as practicable' type of notice [requirement] and not to the 'within the policy year' type of reporting requirement" because requiring an insurance company to show prejudice based on an "insured's failure to report a claim within the policy period or a stated period thereafter would defeat the fundamental concept on which claims-made policies are premised"); New Appleman on Insurance § 20.01[7][b] ("In those jurisdictions that have examined the distinction between [pure] claims-made and claims-made-and-reported policies, the courts have uniformly relieved the insurers from any requirement to prove prejudice under the latter form of coverage.").

43

conclude that the legislature did not intend to rewrite the fundamental terms of the WILMIC insurance policy or to make the strict reporting requirement underlying claims-made-and-reported policies unenforceable in this state.

¶104 For the reasons set forth, we conclude that Wisconsin's notice-prejudice statutes do not supersede the reporting requirement specific to claims-made-and-reported policies.

¶105 Because we so conclude, we need not address whether, under the notice-prejudice statutes, WILMIC was prejudiced by Attorney Aul's failure to report the claim during the policy period. However, even if we had determined that the notice-prejudice statutes supersede this reporting requirement, WILMIC would prevail. Requiring an insurance company to provide coverage for a claim reported after the end of a claims-made-and-reported policy period is per se prejudicial to the insurance company.

*By the Court.*—The decision of the court of appeals is reversed.

¶106 ANNETTE KINGSLAND ZIEGLER, J.   *(concurring).*   I agree with the lead opinion's[1] conclusion that Wis. Stat. §§ 631.81 and 632.26 do not apply to the "within the policy period" reporting requirement at issue.   I am compelled to write separately to clarify that a majority of the court concluded that the statutes at issue are not ambiguous and that their plain meaning dictates the outcome in this case.   The opinion of the court was to be written to clearly state these conclusions.   State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶¶45-46, 271 Wis. 2d 633, 681 N.W.2d 110.   I need to write because the lead opinion writer has rejected suggested changes to the opinion which would make these conclusions clear, and as a result, I write to clarify the majority opinion of the court.

¶107 I write to clarify that although a court may consider whether a particular interpretation of a statute would produce an absurd or unreasonable result, a court may not balance the policy concerns associated with the "consequences of alternative interpretations."   I do not join the lead opinion's discussion of these "consequences," because I would engage in a more traditional plain-meaning analysis to interpret the notice-prejudice statutes, Wis. Stat. §§ 631.81 and 632.26.   I write separately because the lead opinion does not use the phraseology typically associated with a plain-meaning analysis, but instead

---

[1] Today, three justices join this concurrence.  Accordingly, this concurrence represents the majority opinion of the court. The opinion authored by Chief Justice Shirley S. Abrahamson is now the lead opinion.

1

engages in this more subjective "consequences" analysis, which is seemingly inconsistent with our jurisprudence.

¶108 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). We interpret statutes "reasonably, to avoid absurd or unreasonable results." Id., ¶46. "'If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.'" Id. (quoting Bruno v. Milwaukee Cnty., 2003 WI 28, ¶20, 260 Wis. 2d 633, 660 N.W.2d 656). "'In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute.'" Id. (quoting State v. Pratt, 36 Wis. 2d 312, 317, 153 N.W.2d 18 (1967)).

¶109 "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47. "[T]he test for ambiguity examines the language of the statute 'to determine whether well-informed persons should have become confused, that is, whether the statutory . . . language reasonably gives rise to different meanings.'" Id. (quoting Bruno, 260 Wis. 2d 633, ¶21) (internal quotation marks omitted). Wisconsin courts ordinarily do not consult extrinsic sources of statutory interpretation, such as legislative history, unless the language of the statute is ambiguous. Id., ¶50. However, "legislative history is

2

sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶51. A court may also verify a plain-meaning interpretation by consulting statutory history, that is, prior enacted and repealed versions of the statute under review. Cnty. of Dane v. LIRC, 2009 WI 9, ¶27, 315 Wis. 2d 293, 759 N.W.2d 571.

¶110 The notice-prejudice statutes at issue, Wis. Stat. §§ 631.81 and 632.26, by their plain language are not ambiguous and do not apply to the "within the policy period" reporting requirement at issue. These statutes expressly prevent an insurer from "invalidat[ing]" "a claim" under certain conditions. Wis. Stat. §§ 631.81(1), 632.26(1)(b). These statutes do not create an initial grant of coverage. Lead op., ¶¶82-84. There is no initial grant of coverage for a claim reported outside of the claims-made-and-reported policy period. Lead op., ¶28. The notice-prejudice statutes, therefore, do not apply to such a claim. Lead op., ¶59.[2] Applying these statutes to the reporting requirement at issue would create an initial grant of coverage, which would go far beyond the statutory language that prevents the invalidation of existing coverage under certain conditions. See Shannon v. Shannon, 150

---

[2] When the notice-prejudice statutes apply to a claim, "the determination whether an insurer has been prejudiced by the lack of timely notice is essentially a question of fact." Neff v. Pierzina, 2001 WI 95, ¶47, 245 Wis. 2d 285, 629 N.W.2d 177. "'[W]e will uphold the trial court's factual determinations underlying the question of prejudice unless clearly erroneous.'" Id., ¶44 (quoting Rentmeester v. Wis. Lawyers Mut. Ins. Co., 164 Wis. 2d 1, 8-9, 473 N.W.2d 160 (Ct. App. 1991)).

3

Wis. 2d 434, 450-54, 442 N.W.2d 25 (1989) (explaining that courts may use estoppel or waiver to prevent forfeiture of existing coverage but not to create an initial grant of coverage). Accordingly, these statutes are unambiguous in the present case because reasonably well-informed persons should know that these statutes do not apply to the reporting requirement at issue. See Kalal, 271 Wis. 2d 633, ¶47.

¶111 The lead opinion analyzes the statutory history of these statutes. Lead op., ¶¶64-73. The lead opinion's analysis should not be construed as a determination that such analysis is necessary because of any ambiguity in the statutes. To the contrary, analysis of statutory history is part of a plain-meaning analysis and can be used to confirm a statute's plain meaning. Heritage Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶15, 316 Wis. 2d 47, 762 N.W.2d 652 (relying on statutory history to confirm a statute's plain meaning); Cnty. of Dane, 315 Wis. 2d 293, ¶27 (explaining that statutory history is part of a plain-meaning analysis).

¶112 After analyzing statutory history, the lead opinion briefly considers legislative history——specifically, comments made by Wisconsin Legislative Council's Insurance Laws Revision Committee. Lead op., ¶¶74-76. Because the statutes are unambiguous, the opinion's reason for consulting legislative history also must be to confirm the plain meaning of these statutes. See Kalal, 271 Wis. 2d 633, ¶51 ("[L]egislative history is sometimes consulted to confirm or verify a plain-meaning interpretation."); Manitowoc Cnty. v. Samuel J.H., 2013

4

WI 68, ¶27, 349 Wis. 2d 202, 833 N.W.2d 109 (relying on legislative history to confirm plain meaning).

¶113 I also briefly discuss the lead opinion's consideration of "consequences of alternative interpretations." Lead op., ¶¶79-84. I do not join the lead opinion's analysis of these "consequences." The lead opinion states that our holding might harm the Andersons by depriving them of insurance proceeds from Wisconsin Lawyers Mutual Insurance Company and might encourage insurers to add "within the policy period" reporting requirements to more policies. Lead op., ¶¶80-81. The lead opinion then weighs those concerns against the consequences of a contrary holding: transforming all claims-made-and-reported policies into pure claims-made policies and creating an initial grant of coverage for which an insurer did not receive a premium. Lead op., ¶¶82, 84. The lead opinion correctly concludes that applying the notice-prejudice statutes to the reporting requirement at issue "would be unreasonable." Lead op., ¶84. See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 551 N.E.2d 28, 30 (Mass. 1990) ("A requirement that an insurer on a [claims-made-and-reported] policy must show that it was prejudiced by its insured's failure to report a claim within the policy period . . . would defeat the fundamental concept on which [claims-made-and-reported] policies are premised. The likely result would be that [claims-made-and-reported] policies, which offer substantial benefits to purchasers of insurance as well as insurance companies, would vanish from the scene. It would be unreasonable to think that the Legislature intended

5

such a result."). However, the lead opinion's analysis of "consequences" is not in step with a more traditional plain-meaning analysis. As a result, I depart from the lead opinion so as to avoid confusion.

¶114 While courts interpret statutes "to avoid absurd or unreasonable results," Kalal, 271 Wis. 2d 633, ¶46, it is not the role of the court to weigh the "consequences of alternative interpretations." A court may consider the consequences of a particular interpretation of a statute to determine whether that interpretation would produce an absurd or unreasonable result. Here, however, the lead opinion goes beyond the avoidance of absurd or unreasonable results by weighing the "consequences of alternative interpretations" so to inject a subjective component into an otherwise objective analysis. See Force ex rel. Welcenbach v. Am. Family Mut. Ins. Co., 2014 WI 82, ¶165, 356 Wis. 2d 582, 850 N.W.2d 866 (Ziegler, J., dissenting) ("An unpalatable result is not the same as an absurd result. We are to look to the text of the statute to determine whether relief is afforded to the litigants."). I could agree with the lead opinion's analysis in paragraphs 82 and 84 only to the extent that it confirms the notice-prejudice statutes' plain meaning by considering the unreasonable results that a contrary holding would produce. See Samuel J.H., 349 Wis. 2d 202, ¶¶24, 26 (confirming plain-meaning interpretation by determining that a contrary interpretation would produce an absurd or unreasonable result).

6

¶115 To be clear, courts should not consider the "consequences of alternative interpretations" when interpreting a statute. Doing so goes beyond the avoidance of unreasonable or absurd results. See Force, 356 Wis. 2d 582, ¶165 (Ziegler, J., dissenting). The "consequences of alternative interpretations" language was created by Chief Justice Shirley S. Abrahamson's opinion in State v. Hayes, 2004 WI 80, ¶16, 273 Wis. 2d 1, 681 N.W.2d 203. See Hayes, 273 Wis. 2d 1, ¶112 (Sykes, J., concurring) (explaining that consideration of consequences of alternative interpretations "is new to our statutory interpretation jurisprudence, and the majority cites no authority for it"). This approach to statutory interpretation is problematic because it involves "a judicial policy judgment based upon a weighing and balancing of competing 'purposes and consequences' of alternative interpretations. This leaves room for the substitution of the judiciary's subjective policy choices for those of the legislature, a phenomenon that a text-based, plain-meaning approach to statutory interpretation seeks to guard against." Id. (Sykes, J., concurring). I agree that the lead opinion's analysis in this regard is problematic.

¶116 Although I reject the lead opinion's consideration of "consequences of alternative interpretations," I agree with the lead opinion's conclusion that the notice-prejudice statutes, by their plain meaning, do not apply to the reporting requirement at issue. I also agree with the lead opinion's conclusion, consistent with that plain meaning, that applying these statutes

7

to the reporting requirement at issue would produce unreasonable results. I join that conclusion only to the extent that it can be construed as engaging in a plain-meaning analysis of these unambiguous statutes. This writing is intended make clear the majority opinion of the court.

¶117 For the foregoing reasons, I respectfully concur.

¶118 I am authorized to state that Justices N. PATRICK CROOKS, PATIENCE DRAKE ROGGENSACK, and MICHAEL J. GABLEMAN join this concurrence.