# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP1283 |
| COMPLETE TITLE: | In re the marriage of:  Nancy M. Meister and Jay E. Meister: |

S. A. M., A. L. M., O. M. M. and J. E. M., minors, by their guardian ad litem, Jennifer Weber,
          Appellants-Petitioners,
     v.
Nancy M. Meister,
          Respondent.

---

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 361 Wis. 2d 286, 862 N.W.2d 619)
(Ct. App. 2015 – Unpublished)

| | |
|---|---|
| OPINION FILED: | April 7, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Jefferson |
| JUDGE: | William F. Hue |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs<br>ZIEGLER, J., joined by GABLEMAN, J. concur |
| DISSENTED: | |
| NOT PARTICIPATING: | BRADLEY, R. G., J. did not participate |

ATTORNEYS:

     For the appellants-petitioners, there were briefs by *Jennifer Weber* and *Zick & Weber Law Offices, LLP*, Johnson Creek, and oral argument by *Jennifer Weber*.



     For the respondent, there was a brief by *Andrew R. Griggs*, Neuberger, Griggs, Sweet & Smith, LLP, Watertown, and oral argument by *Andrew R. Griggs*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP1283
(L.C. No. 2011FA335)

STATE OF WISCONSIN       :      IN SUPREME COURT

**In re the marriage of: Nancy M. Meister and Jay E. Meister:**

**S.A.M., A.L.M., O.M.M. and J.E.M., minors, by their guardian ad litem, Jennifer Weber,**

    **Appellants-Petitioners,**

  **v.**

**Nancy M. Meister,**

    **Respondent.**

**FILED**

**APR 7, 2016**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 DAVID T. PROSSER, J. This is a review of an unpublished decision of the court of appeals affirming a circuit court order denying a grandmother's motion for visitation rights.[1]

---

[1] S.A.M. v. Meister, No. 2014AP1283, unpublished slip op. (Wis. Ct. App. Feb. 5, 2015).

¶2    The case requires us to interpret Wis. Stat. § 767.43(1) (2013-14),[2] which allows certain categories of individuals to petition for the right to visit children——usually following the dissolution of a marriage.  Under the statute, a "grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child" may file a motion for visitation rights.  We must determine whether the "parent-child relationship" requirement applies only to the "person" category listed in the statute, or whether it applies to a "grandparent, greatgrandparent, [and] stepparent" as well.

¶3    The case arose after Carol Meister filed a motion for the right to visit her four grandchildren in the wake of her son Jay Meister's divorce from Nancy Meister.[3]  A family court commissioner for the Jefferson County Circuit Court initially granted the motion, but the circuit court denied the motion on de novo review.  Reading Wis. Stat. § 767.43(1) as requiring every petitioner under this subsection to demonstrate a parent-child relationship with the child, the circuit court concluded that Carol's supportive relationship with the children did not elevate her to a parent-like role in their lives.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[3] Given that Carol, Jay, and Nancy share a surname, we will refer to them by first name throughout the opinion.

¶4 The Meister children appealed, and the court of appeals affirmed, citing its decision in Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347, as controlling. In Rogers, the court of appeals stated that grandparents filing a motion under Wis. Stat. § 767.43(1) must prove "a parent-like relationship" with the child in order to secure visitation rights. Rogers, 300 Wis. 2d 532, ¶11.

¶5 Before this court, the Meister children argue that the court of appeals misinterpreted Wis. Stat. § 767.43(1) in Rogers. They assert that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies only to a person other than a grandparent, greatgrandparent, or stepparent filing a motion for visitation under the subsection. Nancy counters that reading the subsection to allow courts to grant visitation rights to grandparents, greatgrandparents, and stepparents based solely on a best interest of the child determination would intrude on parents' fundamental due process rights to direct the care, custody, and control of their children.

¶6 We conclude that Wis. Stat. § 767.43(1) does not require a grandparent, greatgrandparent, or stepparent who files a motion for visitation rights under this subsection to prove that he or she "has maintained a relationship similar to a parent-child relationship with the child." Rather, the parent-child relationship element applies only to a "person" seeking visitation rights who is not a grandparent, greatgrandparent, or stepparent. Additionally, we conclude that the legislature's

3

decision to allow courts to grant visitation rights to grandparents, greatgrandparents, and stepparents when visitation is in the best interest of the child does not unconstitutionally infringe on parents' constitutional rights because any best interest determination must give special weight to a fit parent's decisions regarding the child's best interest. Consequently, the decision of the court of appeals is reversed.

I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

¶7    Nancy and Jay Meister married in February 2002. They were divorced in Jefferson County Circuit Court in February 2013. Nancy and Jay are parents of four minor children: S.A.M., A.L.M., O.M.M., and J.E.M.

¶8    By the terms of their divorce judgment and incorporated marital settlement agreement, Nancy and Jay agreed to joint legal custody of their children. Nancy received impasse-breaking authority and primary physical placement, while Jay received regular weekday and weekend placement. In addition to the weekly plan, Nancy and Jay agreed to an extensive placement schedule for holidays, special occasions, and vacations. The agreement included an approximately equal division of major holidays between Nancy and Jay each year; Nancy and Jay switch between various holidays in even and odd years. The plan also guaranteed a week of exclusive time with the children for each parent during the summer.

¶9    In July 2013 the children's paternal grandmother, Carol Meister, filed a motion asking that the court establish visitation rights for her under Wis. Stat. § 767.43(1) on the

4

basis of her grandparent relationship with the children. Her motion indicated that she decided to file the petition in response to changes Nancy had made to Carol's informal visitation with them.[4] Carol sought six visits per year, the right to arrange visits with Jay and Nancy using an online family scheduling portal, and the right to regular phone calls with the children.

¶10 After holding a hearing on the motion, a family court commissioner[5] issued an order in November 2013 granting Carol's motion for visitation. The commissioner read Wis. Stat. § 767.43(1) as "requir[ing] that the grandparent have a relationship similar to a parent-child relationship" in order to secure visitation rights. However, the commissioner found that a relationship similar to a parent-child relationship existed between Carol and her grandchildren, and he granted Carol one week of placement at her home in Ohio each summer, four three-day placements in Wisconsin throughout the year, and access to the online portal to arrange her visits with Nancy and Jay.[6]

_____

[4] For example, after filing her July 2013 motion for visitation rights, Carol wrote an October 2013 letter to the family court commissioner alleging that Nancy objected to Carol's presence at the children's elementary school when Carol attempted to see the children at a September 2013 event that was open to the public.

[5] Michael D. Onheiber, Family Court Commissioner.

[6] The family court commissioner's order granting Carol's motion used the terms "placement" and "visitation" interchangeably. Recent decisions by the court of appeals have examined the extent to which the Wisconsin Statutes contemplate a consequential difference between placement and visitation.
(continued)

¶11 Pursuant to Wis. Stat. § 767.17, Nancy requested that the circuit court review the commissioner's order. On review, the circuit court[7] conducted a hearing to expand the record regarding Carol's relationship with her grandchildren. Carol traveled from Ohio to Wisconsin to testify at the hearing. Appearing without an attorney, she engaged in an extended conversation with the circuit court regarding her relationship with the children.

¶12 Over the course of her testimony, Carol described the supportive role she played in her grandchildren's lives. She began by explaining how, drawing on her own experience as a teacher, she tutored them in various subjects during a vacation to Florida in 2012 and during the children's spring break in 2013. As she continued, she mentioned that she frequently purchased food and clothing for them when they visited her in Ohio and when she visited them in Wisconsin. She emphasized that, even when she was physically distant from the children, she played an important consultative role for them and for their father, helping the children with homework by phone and providing Jay with general parenting advice. The children

_____

See Rick v. Opichka, 2010 WI App 23, 323 Wis. 2d 510, 780 N.W.2d 159; Lubinski v. Lubinski, 2008 WI App 151, 314 Wis. 2d 395, 761 N.W.2d 676. Because the parties in this case have not argued that the order improperly differentiated between placement and visitation, this opinion makes no comment on the extent of any difference between the two.

[7] William F. Hue, Judge.

called her "frequently, almost daily sometimes," when staying with their father.

¶13 Given that Carol appeared pro se and that the children's guardian ad litem——who supported the commissioner's order——was unable to attend the hearing, the circuit court helped to guide Carol's testimony by asking multiple questions about whether Carol had ever lived with the children. The questions focused on determining whether Carol's was the type of case in which "the parents [had] . . . relinquish[ed] their parental duties to the grandparent for some prolonged period of time and . . . the grandparent then [was] acting as the parent." After hearing Carol's testimony, the circuit court expressed concern about taking the "extraordinary step" of concluding that a parent-child relationship sufficient for visitation existed where a grandmother had such a "staggered" relationship with the grandchildren. But, reluctant to reverse the commissioner without hearing from an attorney advocating in favor of Carol's visitation motion, the circuit court decided to schedule a second hearing so that the children's guardian ad litem could attend.

¶14 At the second hearing in January 2014, the guardian ad litem argued that, although Carol may not be a primary parent, she nevertheless had a relationship with the children similar to that of a parent who lived out of state. Arguing that "[t]he statute does not require [Carol] to elevate to the status of primary parent," the guardian ad litem observed that "if Mr. Meister relocated to the State of Ohio and had that same

7

relationship that his mother [had] . . . with the children, he's still a parent."

¶15 After taking the matter under consideration, the circuit court issued a May 2014 order denying Carol's motion. An accompanying memorandum decision explained that the court concluded that Carol was "ineligible for an award of grandparent visitation" because she "did not have a relationship similar to a parent-child relationship" with her grandchildren.

¶16 The children, by their guardian ad litem, appealed the circuit court's denial of their grandmother's motion.[8] Before the court of appeals, the children argued that "the circuit court applied the wrong legal standard when it required that the grandmother, in order to be eligible to receive visitation rights, show that she had a relationship similar to a parent-child relationship with them." S.A.M. v. Meister, No. 2014AP1283, unpublished slip op., ¶12 (Wis. Ct. App. Feb. 5, 2015).

¶17 Relying on its previous interpretation of Wis. Stat. § 767.43(1) in Rogers v. Rogers, 2007 WI App 50, 300

---

[8] As noted above, Carol Meister filed the motion for visitation under Wis. Stat. § 767.43(1). She acted pro se. The grandchildren were represented on the motion by the guardian ad litem who had represented them from the beginning of the divorce. When Nancy Meister sought de novo review in circuit court and prevailed, the guardian ad litem appealed to the court of appeals on behalf of the children. The guardian ad litem also sought review in this court on their behalf.

Standing has not been an issue in this case, and we do not see any prudential reason to make it an issue in this opinion.

Wis. 2d 532, 731 N.W.2d 347, the court of appeals disagreed with the children.  Meister, unpublished slip op., ¶15.  In Rogers, the court of appeals stated that Wis. Stat. § 767.245 (now § 767.43(1)[9]) requires, among other things, that "grandparents must have a parent-like relationship with the child" in order to qualify for visitation rights.  Rogers, 300 Wis. 2d 532, ¶11. The court of appeals in the present case treated that language from Rogers as "a clear declaration that any person seeking visitation rights under Wis. Stat. § 767.43(1) must first show that he or she has a relationship similar to a parent-child relationship in order to establish that he or she is eligible to receive visitation rights."  Meister, unpublished slip op., ¶15 (emphasis added).  "[B]ound by that declaration" from Rogers, id. (citing Cook v. Cook, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997)), the court of appeals affirmed the circuit court's conclusion that Carol had not demonstrated that she maintained a relationship with the children similar to a parent-child relationship, id., ¶¶21-22.

¶18  The court of appeals issued its decision on February 5, 2015.  Shortly afterward, on February 25, 2015, Carol passed

---

[9] Rogers v. Rogers, 2007 WI App 50, 300 Wis. 2d 532, 731 N.W.2d 347, refers to Wis. Stat. § 767.245, the statute in effect at the time the visitation petition was filed.  In 2006 the legislature renumbered Wis. Stat. § 767.245 as Wis. Stat. § 767.43.  2005 Wis. Act. 443, § 101.

away.[10]    The children filed a petition for review on March 2, 2015, which we granted on June 12, 2015.

## II.    STANDARD OF REVIEW

¶19 This case requires us to interpret Wisconsin's grandparent visitation statute.    "The interpretation and application of a statute are questions of law that we review

_____

[10] After the court became aware of Carol's passing, we ordered the parties to submit briefs addressing whether the case should proceed despite Carol's death.    "Ordinarily, this court, like courts in general, will not consider a question the answer to which cannot have any practical effect upon an existing controversy."    State ex rel. La Crosse Tribune v. Circuit Court for La Crosse Cty., 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983).

Both Nancy and the Meister children argue that this case qualifies for an exception to the general mootness rule.    We agree.    This court may decide an otherwise moot issue if the issue

(1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

State v. Morford, 2004 WI 5, ¶7, 268 Wis. 2d 300, 674 N.W.2d 349; see also La Crosse Tribune, 115 Wis. 2d at 229. Because the interpretation of Wis. Stat. § 767.43(1) applies to every visitation petition by a grandparent, greatgrandparent, or stepparent under this subsection, we conclude that this case presents a question of great public importance that will occur frequently in the future.    Given the disjuncture between the plain language of § 767.43(1) and the Rogers court's treatment of that language, a decision from this court resolves any uncertainty as to this particular facet of the statute's interpretation.

independently, 'but benefiting from the analyses of the court of appeals and the circuit court.'" Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶14, 309 Wis. 2d 541, 749 N.W.2d 581 (quoting Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110).

### III.   DISCUSSION

#### A.   Interpreting Wis. Stat. § 767.43(1)

¶20 We begin our analysis by interpreting Wis. Stat. § 767.43(1). When interpreting statutes, this court consistently begins with the statutory language. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id.

¶21 "Context is important to meaning. So, too, is the structure of the statute in which the operative language appears." Id., ¶46. Consequently, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. "It is certainly not inconsistent with the plain-meaning rule to consider the intrinsic context in which statutory language is used; a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., ¶49. A review of the statutory history——meaning "previously enacted and

repealed statutory provisions"——also can play a helpful role in the contextual analysis of a statute's language. Id., ¶52 n.9. Analysis of unambiguous statutory text does not require the court to resort to extrinsic sources of meaning such as legislative history, "although legislative history is sometimes consulted to confirm or verify a plain-meaning interpretation." Id., ¶51.

¶22 Applying this interpretive methodology, we conclude that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies only to an otherwise undefined "person" who petitions for visitation rights under Wis. Stat. § 767.43(1), not to a grandparent, greatgrandparent, or stepparent. A grandparent, greatgrandparent, or stepparent need not prove a parent-child relationship to succeed on a petition for visitation. By this we mean that "maintain[ing] a relationship similar to a parent-child relationship with the child" is not the sine qua non of a visitation petition by a grandparent, greatgrandparent, or stepparent under § 767.43(1). It is, however, the sine qua non for a petitioner who is not a grandparent, greatgrandparent, or stepparent under § 767.43(1).

¶23 We acknowledge that subsection (1) is not wholly unambiguous. In other words, reasonable people have read it in different ways. Nonetheless, we confidently reach the conclusion stated above after reviewing the arguments pro and con, carefully examining the language of Wis. Stat. § 767.43(1), and then reviewing that language in context with surrounding

language and with the statute's history. A brief review of the statute's legislative history confirms our interpretation.

¶24 In its current form, the relevant portion of Wis. Stat. § 767.43(1) reads as follows:

> [U]pon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.[11]

¶25 The Meister children argue that the court of appeals incorrectly applied § 767.43(1) in Rogers, 300 Wis. 2d 532,. When discussing the grandparent visitation statute in Rogers, the court of appeals made the following declaration:

> The grandparents correctly state that Wis. Stat. § 767.245 requires that three conditions must be satisfied before a circuit court may grant visitation: (1) the grandparents must have a parent-like relationship with the child, (2) the parents must have notice of the hearing, and (3) the court must determine that grandparent visitation is in the child's best interest.

Rogers, 300 Wis. 2d 532, ¶11. The court did not support this statement with an exercise of formal statutory interpretation. It simply agreed with the grandparents in the case, whom the

---

[11] Subsection (1)'s use of the phrase "that person" to refer back to any person who files a visitation motion under Wis. Stat. § 767.43(1) contributes to the ambiguity of the subsection. However, we view use of that phrase as unfortunate drafting rather than an indication of legislative intent because of the plethora of other writings by drafters that reveal and explain the language of the subsection.

circuit court found to have had a parent-like relationship with the grandchildren.[12] Elsewhere in the opinion, the court of appeals cited Holtzman v. Knott, 193 Wis. 2d 649, 658, 533 N.W.2d 419 (1995), which used the same language in a visitation case that did not apply that statute.

¶26 Implicitly, under Rogers, any person——whether a grandparent, greatgrandparent, stepparent, or person having a different relationship with the child——must prove the existence of a parent-like relationship with the child in order to secure visitation rights under Wis. Stat. § 767.43(1). This would likely place an extremely heavy burden on grandparents who reside any significant distance from the children. It would disqualify grandparents who because of geography or other factors have been prevented from developing a close relationship.

¶27 According to the Meister children, the phrase "who has maintained a relationship similar to a parent-child relationship with the child" should apply only to a "person" other than a

---

[12] The grandparents' brief in Rogers made a similar statement of the law without providing additional explanation:

> Section 767.245(1), Wisconsin Statutes, provides that a grandparent, among others, can petition the court for visitation rights where that grandparent has maintained a relationship similar to a parent-child relationship and the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that the visitation was in the best interests of the child.

grandparent, greatgrandparent, or stepparent seeking visitation rights under Wis. Stat. § 767.43(1).    They argue in their principal brief that "what the statute seems to ask for is that persons who are not grandparents or stepparents prove up a relationship similar to the one grandparents and stepparents already enjoy by virtue of their biological or legal connection to the child."    To evaluate the Meister children's challenge to the Rogers court's language, we conduct an independent assessment of § 767.43(1).

¶28  The Meister children's focus on relationships has an intuitive appeal.    Wisconsin Stat. § 767.43(1) applies to grandparents of a child of a married or formerly married couple. This means that these grandparents and greatgrandparents have a direct family tie to one of the parents of the child.    A stepparent, under this subsection, is or was married to one of the parents of the child.    On the other hand, the "person" category is undefined so that it is hard to anticipate the nature of the relationship that the "person" has to the child. The "person" could be a sister or brother, but it could also be an aunt or uncle, cousin, former foster parent, neighbor, or friend.    Requiring proof of a significant supportive relationship from persons in this undefined category makes good policy sense.    Requiring the same proof from a grandparent is unnatural, and it would clearly make a successful petition for visitation much more difficult for some grandparents than for others.

¶29 Our interpretation of the statutory language begins with an examination of its syntax. The Meister children urge us to apply the last-antecedent canon of statutory construction, under which "qualifying or limiting clauses in a statute are to be referred to the next preceding antecedent, unless the context or plain meaning dictates otherwise." Vandervelde v. City of Green Lake, 72 Wis. 2d 210, 215, 240 N.W.2d 399 (1976) (concluding that a statute's minimum population requirement affected towns but not cities where statute applied to "any city or village or any town having a population of more than 7,500"); see also Antonin Scalia & Bryan A. Garner, Reading Law 144 (2012) ("A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." (emphasis omitted)); 2A Norman J. Singer & Shambie Singer, Statutes and Statutory Construction § 47:33, at 494-97 (7th ed. 2014) ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is 'the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.'" (footnote omitted)).[13]

---

[13] Black's Law Dictionary provides a similar definition: "An interpretive principle by which a court determines that qualifying words or phrases modify the words or phrases immediately preceding them and not words of phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing." Rule of the Last Antecedent, Black's Law Dictionary 1532-33 (10th ed. 2014). As an example, Black's explains that, "in the phrase Texas courts, New Mexico courts, and New York courts in the federal system, the words in the federal system might be held to modify only New York courts and

(continued)

not Texas courts or New Mexico courts."   Id.

In his critique of the canons of interpretation, Karl Llewellyn presented the rule as two competing canons: "Qualifying or limiting words or clauses are to be referred to the next preceding antecedent," but "[n]ot when evident sense and meaning require a different construction."   Karl N. Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to Be Construed, 3 Vand. L. Rev. 395, 405 (1950).

More recently, Justice Scalia and Bryan Garner examined the rule's application in their book Reading Law.   See Scalia & Garner 144-46.   Their discussion included contemporary and historic examples of the rule's use at the Supreme Court of the United States.   Id. (first citing Barnhart v. Thomas, 540 U.S. 20, 27-28 (2003); then citing Sim's Lessee v. Irvine, 3 U.S. (3. Dall.) 425, 444 n.* (1799)).   For a more recent example of the Supreme Court's application of the canon, in which the Court quoted from Black's and from Reading Law, see the Court's decision on March 1, 2016 in Lockhart v. United States, 136 S. Ct. 958 (2016).

In addition to the Vandervelde case cited in the text above, this court also has periodically applied the last-antecedent rule when interpreting statutes.   See, e.g., Fuller v. Spieker, 265 Wis. 601, 603-05, 62 N.W.2d 713 (1954) (interpreting county ordinance to place time limit on mandatory but not discretionary leave for deputy sheriff where time limit language followed mandatory leave requirement); Serv. Inv. Co. v. Dorst, 232 Wis. 574, 576-78, 288 N.W. 169 (1939) (applying context exception where comma evinced intent for clause to modify all preceding clauses in list, rather than only the immediately preceding clause); cf. Stoker v. Milwaukee Cty., 2014 WI 130, ¶¶23-24, 359 Wis. 2d 347, 857 N.W.2d 102 (declining to apply last-antecedent canon in order to avoid absurd result).

Finally, the Legislative Reference Bureau's Wisconsin Bill Drafting Manual 2015-2016 (2014) (Bill Drafting Manual) suggests drafting with the last antecedent canon in mind.   A section providing guidance with regard to word choice and phrasing encourages drafters to "modify only the words that you intend to modify."   Bill Drafting Manual § 2.01(17m)(a), at 39.   It explains that the phrase "'licensees may hunt moose, deer, or ducks that are not on the endangered species list' is ambiguous."   Id.   After suggesting alternative sentence

(continued)

¶30  Here, interpreting Wis. Stat. § 767.43(1) requires us to determine whether the pronoun "who" in the qualifying clause applies only to a "person" or also applies to grandparents, greatgrandparents, and stepparents.   The list "grandparent, greatgrandparent, stepparent or person" immediately precedes the limiting clause "who has maintained a relationship similar to a parent-child relationship with the child."   Applying the last-antecedent rule to the list limits "who" to the final item in the list——"person."   Consequently, reading § 767.43(1) according to the last-antecedent canon supports the interpretation that a person seeking visitation rights under the subsection needs to prove that he or she has a parent-child relationship with the child only if the person is not a grandparent, greatgrandparent, or stepparent.   We think this is the more natural reading of the phrase.

¶31  Next, we expand the analysis of Wis. Stat. § 767.43 to consider subsection (1) in context with subsection (3). Subsection (3) reads as follows:

> (3) Special  Grandparent  Visitation  Provision. The court may grant visitation rights, with respect to a child, to a grandparent of the child if the child's parents  have  notice  of  the  hearing  and  the  court determines all of the following:

_____

constructions that would avoid ambiguity, the manual cites state and  federal  cases  in  Wisconsin  that  interpreted  statutes  with unclear  modifiers.   Id. § 2.01(17m)(b)-(d),  at  40.   First  among the  cited  cases  is  Vandervelde,  which  the  manual  cites  for  the proposition  that  "qualifying  or  limiting  words  in  a  statute generally  refer  to  the  nearest  antecedent  only."   Id. § 2.01(17m)(d), at 40.

18

(a) The child is a nonmarital child whose parents have not subsequently married each other.

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.

(Capitalization omitted; emphasis added.)

¶32 The legislature explicitly included a relationship requirement for grandparents in subsection (3) but declined to do so in subsection (1). Under subsection (3), a court may grant visitation rights only if it determines, among other things, that "[t]he grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so." § 767.43(3)(d). Reading subsection (1) as requiring proof of a "parent-child relationship" would place a heavier burden on grandparents of marital children than subsection (3)'s mere "relationship" requirement for grandparents of non-marital children——despite the absence of the type of clear requirement

19

that appears in subsection (3).  This suggests that the Rogers interpretation of subsection (1) was not correct.

¶33  A  review  of  the  statutory  history  of  Wis.  Stat. § 767.43(1)  further  indicates  that  the  legislature  did  not intend  to  require  grandparents  to  prove  a  parent-child relationship with the child when petitioning for visitation.  An earlier version of the grandparent visitation statute provided:

> The  court  may  grant  reasonable  visitation privileges to a grandparent or greatgrandparent of any minor  child  upon  the  grandparent's  or greatgrandparent's petition to the court with notice to the parties if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.

Wis.  Stat.  § 767.245(4)  (1985-86).   Under  this  version  of  the statute,  only  a  grandparent  or  greatgrandparent  could  petition for  visitation  rights——there  was  no  provision  for  stepparents  or other  persons——and  a  grandparent  or  greatgrandparent  petitioner did  not  need  to  prove  the  existence  of  any  kind  of  relationship with the child.

¶34  In  1988  the  legislature  passed  1987  Wis.  Act.  355. Section 38 of Act 355 amended the visitation statute to bring it closer  to  its  current  form.   As  amended,  the  statute  read:

> Upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the  court  may  grant  reasonable  visitation  rights  to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

Wis.  Stat.  § 767.245(1)  (1987-88).   An  inline  note,  authored  by the  Legislative  Council,  accompanied  section  38  of  Act  355  and

20

explained that the amendment "[e]xtend[ed] the current law permitting the court, upon petition, to grant visitation rights to a grandparent or greatgrandparent to: (1) a stepparent; and (2) any person who has maintained a relationship similar to a parent-child relationship with the child."

¶35 Taken together, the change to the language of the statute and the Legislative Council note provide compelling evidence that the legislature intended that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" should apply only to a "person" petitioning for visitation under the statute. Rather than placing more stringent requirements on grandparents and greatgrandparents filing motions under the statute, the legislature actually expanded the categories of people who might petition for visitation in any particular case by allowing stepparents and other persons to do so. The Legislative Council note then confirmed the expansive nature of the changes, making clear that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" attaches only to a "person" petitioning for visitation rights while placing no such condition on petitions by grandparents, greatgrandparents, and stepparents.

¶36 This characterization of Wis. Stat. § 767.43(1) and the accompanying Legislative Council note is consistent with this court's previous discussions of the statute's history, which have focused on the legislature's gradual expansion of visitation rights. In Holtzman, the court quoted the same note

21

and indicated that "[t]he major change in 1988, as explained by the Legislative Council's Special Committee notes, was to extend the current law." Holtzman, 193 Wis. 2d at 672 (internal quotation mark omitted). Similarly, our discussion in Sporleder v. Hermes, 162 Wis. 2d 1002, 471 N.W.2d 202 (1991), overruled on other grounds by Holtzman, 193 Wis. 2d 659, implicitly associated the parent-child relationship requirement only with a "person" petitioning for visitation when noting that Wis. Stat. § 767.43(1) had been "amended to include a 'person who has maintained a relationship similar to a parent-child relationship with the child,' as persons who may petition for visitation rights." Sporleder, 162 Wis. 2d at 1016.

¶37 Nothing in Act 355's legislative history contradicts our reading of § 767.43(1). A review of the Act's drafting file indicates that the language at issue remained consistent with its present form throughout the drafting and amendment process. Additionally, an Analysis by the Legislative Reference Bureau——originally appended to a draft at the beginning of the legislation but later replaced by the Legislative Council notes already discussed——confirms our understanding of the legislature's intended change:

> Under current law . . . the court may provide visitation privileges to a grandparent or greatgrandparent if that is in the child's best interest. Under this bill, the current law permitting visitation by grandparents and greatgrandparents is extended to apply to stepparents, persons who have maintained a relationship similar to a parent-child relationship with the child and, under certain circumstances, any other person.

22

Drafting File for 1987 Wis. Act. 355, Analysis by the Legislative Reference Bureau of 1987 A.B. 205, Legislative Reference Bureau, Madison, Wis.  Although this analysis did not appear with the final Act, it nevertheless indicates that——throughout the drafting process——the phrase "who has maintained a relationship similar to a parent-child relationship with the child" attached only to a person other than a grandparent, greatgrandparent, or stepparent.

¶38  Collectively, these aspects of the context and history of Wis. Stat. § 767.43(1) support our reading of its language: the phrase "who has maintained a relationship similar to a parent-child relationship with the child" applies to a "person" seeking visitation but not to a grandparent, greatgrandparent, or stepparent.

¶39 We now evaluate the implications of this interpretation for parents' constitutional rights to direct the care, custody, and control of their children.

B.  Wis. Stat. § 767.43(1) Does Not Unconstitutionally Infringe on Parents' Due Process Rights

¶40  In her brief and at oral argument, Nancy argued that interpreting the statute not to require grandparents, greatgrandparents, and stepparents to prove a parent-child relationship when seeking visitation would unconstitutionally interfere with parents' rights to raise their children.  Citing Troxel v. Granville, 530 U.S. 57 (2000), she suggests that "[i]n order to respect the constitutionally protected liberty interest parents have, there must be a larger barrier to usurping

23

parents' control than notice of hearing and a best interest inquiry." We conclude that the court of appeals appropriately addressed and resolved this contention in Roger D.H. v. Virginia O., 2002 WI App 35, 250 Wis. 2d 747, 641 N.W.2d 440.

¶41 In Troxel, the Supreme Court of the United States reaffirmed that the "Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel, 530 U.S. at 66. The case involved a State of Washington statute, which provided, "Any person may petition the court for visitation rights at any time including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances." Id. at 61 (quoting Wash. Rev. Code § 26.10.160(3) (1994)). Under that statute, the children's paternal grandparents sought an extensive visitation order following their son's death, but the children's mother opposed the request, favoring short, monthly visits with the grandparents. Id. at 60-61. A state trial court had entered a visitation order after concluding that visitation with the grandparents would be in the children's best interest. Id. at 61-62.

¶42 A Plurality of the Supreme Court stopped short of holding the statute facially unconstitutional but did conclude that, as applied by the Washington court, the statute unconstitutionally interfered with the mother's rights to define

24

the care, custody, and control of her children.  Id. at 67, 73 (plurality opinion).  The Plurality explained the important role that parents play in defining the best interests of their children:

> The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests. . . . In effect, the judge placed on [the mother], the fit custodial parent, the burden of disproving that visitation would be in the best interest of her daughters.

Id. at 69.  In limiting its determination to an as applied analysis, the Plurality commented, "Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." Id. at 73.

¶43 Shortly after the Court decided Troxel, Wisconsin's court of appeals considered a facial challenge to Wis. Stat. § 767.43(1) in Roger D.H.  A child's mother sought to vacate a court-approved stipulation granting visitation rights to the child's paternal grandmother.  Roger D.H., 250 Wis. 2d 747, ¶¶4-5.  She asserted that "Wis. Stat. § 767.245 is facially unconstitutional under Troxel because the statute does not require that courts give presumptive weight to a fit parent's decision regarding non-parental visitation."  Id., ¶13.

¶44 The court of appeals rejected the facial challenge:

> We glean from Troxel two propositions relevant to the issue before us.  First, due process requires that

25

courts apply a presumption that a fit parent's decision regarding non-parental visitation is in the best interest of the child. Second, a state court may read this requirement into a non-parental visitation statute, even when the statute is silent on the topic.

Accordingly, we hold that when applying Wis. Stat. § 767.245(3), circuit courts must apply the presumption that a fit parent's decision regarding grandparent visitation is in the best interest of the child. At the same time, we observe that this is only a presumption and the circuit court is still obligated to make its own assessment of the best interest of the child. What the Due Process Clause does not tolerate is a court giving no "special weight" to a fit parent's determination, but instead basing its decision on "mere disagreement" with the parent.

Id., ¶¶18-19 (citation omitted).

¶45 Although Roger D.H. involved the statute now codified at Wis. Stat. § 767.43(3), we conclude that the court of appeals' reasoning is equally appropriate with regard Wis. Stat. § 767.43(1). As under subsection (3), a court may grant visitation under subsection (1) only if the court determines that doing so would be in the child's best interest. The Supreme Court indicated in Troxel that any examination of a child's best interest must give special weight to a fit parent's own best interest determination. Troxel, 530 U.S. at 69-70 ("The decisional framework employed by the Superior Court directly contravened the traditional presumption that a fit parent will act in the best interest of his or her child. In that respect, the court's presumption failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters."). Troxel's presumption in favor of a fit parent's

26

determination would apply to a court's evaluation of a § 767.43(1) visitation petition as a part of the best interest analysis——and the presumption would apply regardless of whether the petitioner proved a parent-child relationship with the child.

¶46 Thus, our holding——that the phrase "who has maintained a relationship similar to a parent-child relationship with the child" does not apply to a grandparent, greatgrandparent, or stepparent petitioning for visitation rights under § 767.43(1)—— does not conflict with parental constitutional rights as set forth in Troxel. Whenever someone brings a visitation petition under § 767.43(1)——whether the petitioner is a grandparent, greatgrandparent, stepparent, or other person——Troxel requires that the deciding court give special weight to a fit parent's opinions regarding the child's best interest as part of any best interest determination.

¶47 We think it important to note that while our decision eliminates one unintended impediment for grandparents, greatgrandparents, and stepparents who seek visitation rights under Wis. Stat. § 767.43(1), it does not guarantee that they will prevail. The court must not only consider the constitutional rights of the parents but also decide, in its sound discretion, whether the facts and circumstances of the case warrant granting, modifying, or denying a visitation petition in the best interest of the child.

IV.  CONCLUSION

27

¶48  Examining Wis. Stat. § 767.43(1) in its present form, it is clear that the legislature has gradually expanded the number of persons who may petition for visitation rights.  The current statute allows grandparents, greatgrandparents, and stepparents to petition for visitation rights, and it allows other persons to seek visitation as well, so long as they have "maintained a relationship similar to a parent-child relationship with the child."  Given the legislature's history of expanding visitation rights and the fact that any court considering a child's best interests under Wis. Stat. § 767.43(1) must give special weight to fit parents' best interest determinations, we conclude that a grandparent, greatgrandparent, or stepparent need not prove a parent-child relationship in order to secure visitation rights under that subsection.

*By the Court.*—The decision of the court of appeals is reversed.

¶49  REBECCA G. BRADLEY, J., did not participate.

¶50 SHIRLEY S. ABRAHAMSON, J. *(concurring).* This is a statutory interpretation case. The statute at issue is Wis. Stat. § 767.43(1). Wisconsin Stat. § 767.43(1) provides that a "grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship" may petition the court to seek visitation rights to the child; the court may grant visitation if visitation is in the child's best interests.

¶51 In the instant case, Carol Meister, the paternal grandmother of four minor children, S.A.M., A.L.M., O.M.M., and J.E.M., filed a motion in the children's parents' divorce action to establish visitation with the children.

¶52 The circuit court denied the grandmother's motion for visitation, concluding that the grandmother failed to show a "relationship similar to a parent-child relationship" as required under the court of appeals' interpretation of Wis. Stat. § 767.43(1) in Rogers v. Rogers, 2007 WI App 50, ¶11, 300 Wis. 2d 532, 731 N.W.2d 347.

¶53 The court of appeals affirmed the circuit court's order in an unpublished decision. It too relied on the Rogers v. Rogers case.[1] The majority opinion disagrees with the court of appeals' interpretation of Wis. Stat. § 767.43(1).

¶54 I write separately to make two points.

¶55 I. First, although I happen to agree with this court's interpretation of Wis. Stat. § 767.43(1), I conclude

---

[1] S.A.M. v. Meister, No. 2014AP1283, unpublished slip op., ¶¶13-14 (Wis. Ct. App. Feb. 5, 2015).

1

that this court violates the plain language of § 767.43(1) by deciding the instant case.[2]

¶56 Wisconsin Stat. § 767.43(1), entitled "Petition, who may file" provides (with added emphasis):

> Except as provided in subs. (1m) and (2m), upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

¶57 The grandmother did not appeal the circuit court's denial of visitation or pursue the review in this court. The guardian ad litem (and the children whom the guardian ad litem represents) pursued the appeal and review.

¶58 Under the plain text of the statute, only a grandparent (or other named individual not relevant in the instant case) may seek visitation with a child and a court may grant visitation only to these identified persons.

¶59 Neither the guardian ad litem nor the children argue that they fall within the ambit of Wis. Stat. § 767.43(1). Thus the right parties are not before the court. Accordingly, this court does not have any statutory or other basis to consider the petition for review filed by a person not identified in the

---

[2] Members of the court do not always agree about the methodology to be used in interpreting statutes. See, e.g., Justice Ziegler's concurrence, ¶80 (concluding ¶23 of the majority opinion is unnecessary because Wis. Stat. § 767.43(1) is unambiguous); see also Anderson v. Aul, 2015 WI 19, 361 Wis. 2d 63, 862 N.W.2d 304.

statute as having the power to seek visitation with the children.[3]

¶60 II. Second, I am concerned that the statutory interpretation set forth in the instant case puts the constitutionality of Wis. Stat. § 767.43(3) in doubt.

¶61 The burden that Wis. Stat. § 767.43(3) imposes on a grandparent seeking visitation rights to children born to unmarried parents is significantly greater than the burden § 767.43(1) imposes on a grandparent seeking visitation rights to children born to a married couple.

---

[3] This issue might be framed as a question of "standing," see majority op., ¶16 n.8, but it is easier to frame and analyze the issue as one of statutory interpretation, namely whether the children and guardian ad litem may initiate and pursue the proceeding under the statute. The concept of standing has numerous dimensions. Standing and statutory interpretation are distinct and should not be conflated. See Foley-Ciccantelli v. Bishop's Grove Condo Ass'n, Inc., 2011 WI 36, ¶¶5, 54, 333 Wis. 2d 402, 797 N.W.2d 789 ("There is no single longstanding or uniform test to determine standing in the case law. . . . The essence of the question of standing . . . is . . . whether the injured interest of the party whose standing is challenged falls within the ambit of the statute or constitutional provision involved."); see also William A. Fletcher, The Structure of Standing, 98 Yale L.J. 221, 236 (1988) ("'When a plaintiff seeks standing on the basis that an interest is protected by statute, the question whether that interest is legally protected for standing purposes is the same as the question whether plaintiff (assuming his or her factual allegations are true) has a claim on the merits.'") (quoting Stephen G. Breyer & Richard B. Stewart, Administrative Law and Regulatory Policy: Problems, Text, and Cases 1094 (2d ed. 1985) (footnote omitted)); Wisconsin's Envt'l Decade, Inc. v. Pub. Serv. Comm'n of Wis., 69 Wis. 2d 1, 11, 230 N.W.2d 243 (1975) (describing cases resolved "on the notion that the statute relied upon by the person seeking review did not give legal recognition to the interest asserted" as "rest[ing] upon statutory interpretation rather than the law of standing itself.").

¶62 Statutory classifications based on the child being a nonmarital child are subjected to a heightened level of scrutiny.[4] A statutory classification based on the status of a child as a nonmarital child will be struck down under the Equal Protection Clause if the "classification is justified by no legitimate state interest, compelling or otherwise."[5]

¶63 For the reasons set forth, I write separately.

I

¶64 Wisconsin Stat. § 767.43(1), entitled "Petition, who may file," states (in relevant part): "[U]pon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interests of the child."

¶65 In the instant case, the children's paternal grandmother, Carol, filed a motion seeking visitation with the children. The grandmother represented herself in the visitation proceedings.

¶66 The children's guardian ad litem agreed with the grandmother that visitation was in the children's best interest. The circuit court noted that the guardian ad litem "took the

_____

[4] Pickett v. Brown, 462 U.S. 1, 7 (1983).

[5] Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 175-76 (1972).

4

laboring oar" in a hearing regarding the grandmother's motion for visitation.

¶67 The grandmother did not, however, appeal from the circuit court's order denying her motion for visitation. Nor was the grandmother a party in this court.[6] See majority op., ¶18 n.10.

¶68 The instant case poses a question raised at oral argument but not addressed by the court or the parties' briefs: May an individual other than a "grandparent, greatgrandparent, stepparent, or person who has maintained a relationship similar to a parent-child relationship with the child" initiate and pursue an appeal or a review of the circuit court's order denying visitation to a grandparent under Wis. Stat. § 767.43(1)? Simply and more specifically stated, may a guardian ad litem for minor children initiate and pursue a proceeding in an appellate court regarding a circuit court's order denying a grandparent's petition for visitation?

¶69 Given the statutory limitations on who may bring a petition for visitation and to whom a court may grant visitation, I conclude that the guardian ad litem cannot

---

[6] Indeed, the grandmother passed away before the petition for review was filed in this court. The grandmother's death was brought to the court's attention by a letter. Contrary to the practices and procedures of this court, one justice and a commissioner, without a vote of the court, unilaterally ordered supplemental briefing regarding whether the case was moot. The issue in the present case is not one of mootness. The issue is whether an appeal or review initiated and pursued by a guardian ad litem representing the children falls within the purview of Wis. Stat. § 767.43(1). See majority op., ¶16 n.8.

5

initiate and pursue proceedings in an appellate court seeking review of a circuit court's order denying a grandparent's petition for visitation.

¶70 The children and their guardian ad litem are not within the ambit of Wis. Stat. § 767.43(1). Wisconsin Stat. § 767.43(1) limits the right to petition the court for visitation to identified individuals; the statute does not identify children or their guardian ad litem as petitioners. The right parties are not before the court.

II

¶71 Given this court's interpretation of Wis. Stat. § 767.43(1), I question whether the statutory interpretation set forth in the instant case puts the constitutionality of Wis. Stat. § 767.43(3) in doubt.

¶72 Wisconsin Stat. § 767.43(1), entitled "Petition, who may file," provides (with added emphasis):

> Except as provided in subs. (1m) and (2m), <u>upon petition by a grandparent</u>, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and <u>if the court determines that visitation is in the best interest of the child</u>.

¶73 The court interprets Wis. Stat. § 767.43(1) to mean that a grandparent need not demonstrate a relationship with the child to be granted visitation.[7] In other words, Wis. Stat. § 767.43(1), as interpreted in the instant case, allows a

---

[7] <u>See</u> majority op., ¶6.

"grandparent" to obtain visitation based solely on the best interests of the child.[8]

¶74 In contrast, Wis. Stat. § 767.43(3), entitled "Special grandparent visitation provision," requires a grandparent of a child born to unmarried parents to demonstrate a relationship with the child or efforts to maintain such a relationship.

¶75 Wisconsin Stat. § 767.43(3) provides:

The court may grant reasonable visitation rights, with respect to a child, to a grandparent of a child if the child's parents have notice of the hearing and the court determines all of the following:

(a) The child is a nonmarital child whose parents have not subsequently married each other.

(b) Except as provided in sub. (4), the paternity of the child has been determined under the laws of this state or another jurisdiction if the grandparent filing the petition is a parent of the child's father.

(c) The child has not been adopted.

(d) The grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child.

(e) The grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational or spiritual welfare.

(f) The visitation is in the best interest of the child.[9]

---

[8] See majority op., ¶6.

¶76 Wisconsin Stat. § 767.43(3), the "[s]pecial grandparent visitation provision" pertaining to a nonmarital child, allows a grandparent to obtain visitation if the grandparent demonstrates, among other things, that (1) "[t]he grandparent has maintained a relationship with the child or has attempted to maintain a relationship with the child but has been prevented from doing so by a parent who has legal custody of the child;" (2) "[t]he grandparent is not likely to act in a manner that is contrary to decisions that are made by a parent who has legal custody of the child and that are related to the child's physical, emotional, educational, or spiritual welfare;" and (3) visitation is in the best interest of the child.

¶77 Statutory classifications based on the child being a nonmarital child are subjected to a heightened level of scrutiny.[10] A statutory classification based on the status of a child as a nonmarital child will be struck down under the Equal Protection Clause if the "classification is justified by no legitimate state interest, compelling or otherwise."[11]

¶78 What legitimate state interest is served by Wis. Stat. § 767.43(3) imposing a substantially higher burden on a grandparent seeking visitation based solely on the child's parents' marital status?

---

[9] Wisconsin Stat. § 767.43(3) applies to a grandparent requesting visitation whenever sub. (a) to (c) apply to the child. See Wis. Stat. § 767.43(2m).

[10] Pickett, 462 U.S. at 7.

[11] Weber, 406 U.S. at 175-76.

¶79 For the reasons set forth, I concur and write separately.

¶80 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I join all but ¶23 of the opinion of the court. In my view, the plain text of Wis. Stat. § 767.43(1) is unambiguous. The court's further analysis of § 767.43(1) simply confirms that the obvious interpretation of the statute is the correct one. See, e.g., Hirschhorn v. Auto-Owners Ins. Co., 2012 WI 20, ¶¶34-36, 338 Wis. 2d 761, 809 N.W.2d 529 (using canons of construction to confirm, but not displace, the plain meaning of an unambiguous term); Anderson v. Aul, 2015 WI 19, ¶¶111, 114, 361 Wis. 2d 63, 862 N.W.2d 304 (Ziegler, J., concurring) (analysis of statutory history and consideration of absurd results can be used to confirm an unambiguous statute's plain meaning); Noffke ex rel. Swenson v. Bakke, 2009 WI 10, ¶18, 315 Wis. 2d 350, 760 N.W.2d 156 (noting that reliance on a dictionary does not render a word or phrase ambiguous).[1]

¶81 For the foregoing reasons, I respectfully concur.

¶82 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this opinion.

---

[1] I write this footnote to briefly confirm that the methodology applied by Justice Prosser comports with longstanding precedent as stated in State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.